Syllabus.

ERNEST H. WODEHOUSE ET AL., TRUSTEES UN-
DER THE LAST WILL AND OF THE ESTATE
OF BATHSHEBA M. ALLEN, DECEASED, *v.*
IWALANI A. ROBINSON ET AL.

## No. 1434.

APPEAL FROM CIRCUIT JUDGE FIRST CIRCUIT.
HON. J. J. BANKS, JUDGE.

ARGUED JUNE 5, 1923.            DECIDED SEPTEMBER 18, 1923.

PETERS, C. J., PERRY AND LINDSAY, JJ.

WILLS—*construction—devise to "children."*

The general construction of the word "children" when used in
a will accords with its popular and ordinary signification, namely,
as designating the immediate offspring.

SAME.

In a will bequeathing certain income to the brother and sisters
of the testatrix "for her, his or their natural life or lives," there
was a proviso that "if my brother or any of my sisters shall die
at any time leaving a child or children surviving him or her then
in every such case and until the death of the last survivor of my
brother and sisters such child or children (in equal shares while
there shall be more than one) shall have the use, benefit, enjoy-
ment and income of and from my said trust estate, which his or
her or their parent would have taken if living." *Held,* that the
words "child" and "children" were used in this proviso in their
primary or ordinary sense of offspring in the first degree.

OPINION OF THE COURT BY PERRY, J.

This is a suit in equity instituted by the trustees
under the will and of the estate of Bathsheba M. Allen,
deceased, for the construction of that portion of the forty-
eighth clause of the will of the decedent which reads as
follows: "provided, however, that if my brother or any
of my sisters shall die at any time leaving a child or
children surviving him or her then in every such case

and until the death of the last survivor of my brother and·sisters such child or children (in equal shares while there shall be more than one) shall have the use, benefit, enjoyment and income of and from my said trust estate, which his or her or their parent would have taken if living." The trustees express themselves in their petition as being uncertain whether in this provision the word "children" is used as meaning immediate offspring or as meaning or including grandchildren.

The decedent left surviving her a brother, Mark P. Robinson, and five sisters, Mary E. Foster, Victoria Ward, Matilda Foster, A. (Watty) Jaeger and Lucy McWayne. The testatrix died on February 11, 1914. Mrs. Jaeger, her sister, died on November 29, 1921, leaving surviving her two children, Iwalani A. Robinson and Samuel Allen Jaeger. Two of her children, James E. Jaeger and Henry A. Jaeger, died before their mother, the first of these leaving surviving him five children who are parties respondent in this suit and the second leaving surviving him one child who is likewise a party respondent. The question upon which the trustees desire to be instructed is whether the portion of the income of the estate of the decedent which was payable to Mrs. Jaeger in her lifetime is now payable wholly to her two surviving children, Mrs. Robinson and Samuel Allen Jaeger, or is payable in part to the grandchildren of Mrs. Jaeger, that is to say, to the five children of her son James and to the one child of her son Henry.

It cannot properly be said that the word "children" is ambiguous or of doubtful meaning. Its ordinary and every-day meaning, when used in legal documents as well as in common parlance, is descendants in the first degree or of the first generation. It can be and is sometimes used as denoting descendants in the second degree and even in more remote degrees; but it is well settled that when the

word is used in a will it is to be read in its ordinary
every-day acceptation unless there is something in the will
to show that it is used as meaning grandchildren or per-
haps even in some broader sense. This was definitely so
held in the case entitled *Estate of Hartwell,* 23 Haw. 213,
215. Quoting from *Churchill* v. *Churchill,* 59 Ky. 466,
469, the court there said: "The technical legal import of
the word 'children' accords with its ordinary and popular
signification. It does not denote grandchildren; and,
though some times used with that purpose and effect,
there is no warrant for thus enlarging its meaning in
construing a will, unless indispensably necessary to effect-
uate the obvious intent of the testator. It may be regard-
ed as well settled that such enlarged or extended import
of the word 'children,' when used as descriptive of persons
to take under a will, is only permissible in two cases.
First, from necessity, where the will would be otherwise
inoperative; and second, where the testator has shown
by other words that he did not use the word in its ordi-
nary and proper meaning, but in a more extended sense.
About this rule of construction, there seems to be no con-
flict in the authorities."

In *Adams* v. *Law,* 17 How. 417, 421, the Supreme Court
of the United States said: "The legal construction of the
word 'children' accords with its popular signification,
namely, as designating the immediate offspring. See
Jarman on Wills, 51. It is true, in the construction of
wills, where greater latitude is allowed, in order to effect
the obvious intention of the testator, grandchildren have
been allowed to take under a devise 'to my surviving
children.' But even in a will, this word will not be con-
strued to mean grandchildren, unless a strong case of
intention or necessary implication requires it."

"The word 'children' in its primary meaning is limited
to descendants in the first degree, i. e., the imme-

diate issue or offspring of the parent.   This is the techni-
cal and legal signification of the term, agreeing with its
ordinary sense, and, in the absence of a clear indication
of a contrary intention in the context, it must be taken
in this sense and not as including grandchildren.   And it
will require express words, or very strong and necessary
implication arising from the will itself, to show that the
testator intended to include grandchildren in a gift to
children *simpliciter.*"   2 Underhill on Wills, Sec. 548.

With the one exception hereinafter referred to, no ex-
press provisions or language of the will are pointed out
on behalf of the grandchildren of Mrs. Jaeger to support
the view that the word "children" as used in the portion
under consideration of the forty-eighth clause was in-
tended to mean or include "grandchildren."   Their main
argument is, as it is expressed by counsel, that the "evi-
dent intent, throughout the will" is to treat the brother
and sisters of the testatrix and their families "with fair-
ness, justice and equality"; that the "scheme of the will"
embraced "equality of treatment not only between the
respective families of the brother and sisters but among
the members of each family, including children of de-
ceased's children"; that the testatrix had a "plan of
equity among her collaterals;" and that "there is dis-
cernible a general plan and intent on the part of the tes-
tatrix to provide for and distribute her property between
her brother and sisters, the children of those of them who
had children and the grandchildren impartially on the
basis of a studied equality, having regard for the circum-
stances."   We can only say, after a careful study of the
whole will, that we are unable to find in the will any plan
or scheme or intent on the part of the testatrix to give
equal amounts or values to all of the descendants of each
brother or sister or even to make any gift whatever to all
such descendants where any of them at all are given such

gifts. If the testatrix had any such plan or intention, she has not sufficiently expressed it. While there is no doubt that in the construction of a will the object of the court is always to find and effectuate the intention of the testator, it is equally true that the intention thus referred to is the intention as expressed in the will. It does not include an intention possibly had at some time anterior to the drafting of the will but abandoned at the time of its execution nor even an intention which, as others would contend, was in the mind of the testatrix but which neither expressly nor by necessary implication is set forth in the will. Courts, of course, cannot amend wills— not even when a testator is claimed by his survivors to have intended to include something in his will which is not there included.

But who is to say whether the provision made by such a testatrix as this one amongst her numerous collaterals and their descendants is "fair" or "just" or "equal"? No one other than the testatrix herself. It was her property that she was disposing of in her will. She knew better than any court can know the history of her collaterals and of their relations with her. What might seem fair and just and equal in the treatment of these collaterals might be one thing in her estimate and quite another in the estimate of the court or of the relatives themselves. In all such matters her view must be allowed to prevail.

Not only is it impossible to find in the will indications of any desire on the part of the testatrix to make gifts to the grandchildren of the brother and sisters of the same sums or values as are given to the children of the brother or sisters but, as will appear hereinafter, such indications as are contained in the will entirely negative any such general plan or desire.

On behalf of one of the grandchildren of Mrs. Jaeger .

it is urged (this is the only reference by any of the contesting grandchildren to any specific language of the will as furnishing cause for regarding the word "children" in the provision in question in the forty-eighth clause as meaning "grandchildren") that in the following language in paragraph 48 is to be found a definite indication that the word "children" was used as meaning "grandchildren," to-wit: "so that the children of my brother and sisters who shall be the object of this trust shall take in equal shares per stirpes and not per capita and the children being objects of this trust of any child of my brother or sisters having died in the lifetime of my brother and sisters or the survivor of them shall take equally between them the share which the parent would have taken had he or she survived the last survivor of my brother and sisters aforesaid." For a proper understanding of the language just quoted and thus relied upon a study of the whole of the forty-eighth clause is necessary. That clause reads as follows:

"I give, devise and bequeath all the rest, residue and remainder of my property of every description, nature and kind and wheresoever situate, hereinafter called my 'Trust Estate', unto Mark P. Robinson, Paul Muhlendorf and James E. Jaeger, and their successors in trust, hereinafter called my 'Trustees', upon trust, that my brother Mark P. Robinson and my sisters, Mary E. Foster, Victoria Ward, Matilda Foster, A. (Watty) Jaeger and Lucy McWayne, shall have the use, benefit, enjoyment and income thereof for and during the term of their natural lives, and the survivors and survivor of them, for her, his or their natural life, or lives (equally while more than one); provided, however, that if my brother or any of my sisters shall die at any time leaving a child or children surviving him or her then in every such case and until the death of the last survivor of my brother and sisters such child or children (in equal shares while there shall be more than one) shall have the use, benefit, enjoyment and in-

come of and from my said Trust Estate, which his or her or their parent would have taken if living, and on the death of the last survivor of my said brother and sisters I give, devise and bequeath all the rest, residue and remainder of my property of every description, nature and kind and wheresoever situate, and free and clear of the terms and provisions of this trust absolutely and unconditionally, vesting without conveyance or other act or writing from or by my said Trustees, to all of the children then living of my said brother, Mark P. Robinson, and my said sisters, Mary E. Foster, Victoria Ward, Matilda Foster, A. (Watty) Jaeger and Lucy McWayne, said children taking per stirpes, the children if more than one of my brother or any sister taking in equal shares among themselves, and to the children then living of any child then deceased of my brother or sisters taking per stirpes by right of representation; so that the children of my brother and sisters who shall be the object of this trust shall take in equal shares per stirpes and not per capita and the children being objects of this trust of any child of my brother or sisters having died in the lifetime of my· brother and sisters or the survivor of them shall take equally between them the share which the parent would have taken had he or she survived the last survivor of my brother and sisters aforesaid."

In the statement beginning with the words "so that the children" the expression "the children being objects of this trust of any child of my brother or sisters having died in the lifetime of my brother and sisters or the survivor of them" does not show that the word "children" wherever used in the forty-eighth clause means "grandchildren" but, grammatically and obviously, means simply that whenever the children of any child of a brother or sister are by the provisions of the clause objects of the trust (as they are with reference to the corpus and as they are not with reference to the income) in all such instances they shall take "equally between them" the

·share which their parent would have taken had he or she survived the last survivor of the brother and sisters.

The following considerations tend to show that the word "children" was used in the provision concerning which the trustees are in doubt, in its primary and ordinary legal and every-day acceptation of offspring in the first degree:

First.    This is the primary and ordinary meaning of the word and it is not to be departed from unless the context seems to require it.    Nothing in the context in this case requires it.

Second.    The language used is that such children shall have the income which his or her or their "parent" would have taken if living.    The word "parent" is here used as meaning one who produces the offspring.    Only in an unusual or strained way could it be used as meaning other predecessors.    If the word "children" in this provision is read in its ordinary sense, the word "parent" can also be so read; whereas, if the first is read as meaning "grandchildren," the word "parent" must likewise be given a strained construction.

Third.    In the proviso under consideration the gift is to the child or children "in equal shares while there shall be more than one,"—not *if* there shall be more than one.    In other words, the testatrix meant that in the case of a brother or sister dying and leaving, for the sake of illustration, four children surviving him or her, the four would take equally while they all lived.    Upon the death of one of the four, the remaining three would take equally, to the exclusion of any surviving children of the fourth child.    Upon another of the four dying, the remaining two would take equally the whole, again excluding any surviving child of the second deceased child.    Upon the death of the third of the four children, the fourth or last survivor would take the whole to the exclusion of any and

all of the children of the three children who had died. If the testatrix' thought was to give a share of the income of the residue under the forty-eighth clause to the children of any deceased child of a brother or sister, she would naturally be expected to make the same provision whether the child of the brother or sister died before or after its parent, provided only it was before the vesting of the corpus.

Fourth.   Does the word "children" in the proviso in question *mean* "grandchildren" ·or does it *include* grandchildren?   The argument on behalf of the contesting grandchildren does not distinguish between these two possibilities.   If the word is to be read as meaning grandchildren then children of the first generation are excluded, which would be a radical departure from the ordinary meaning of the word "children" and an unnatural provision for which no support is to be found in this will.   If, on the other hand, the word "children" is to be read as including both children of the first generation and issue of later generations, some direction would naturally be expected from the testatrix as to whether the grandchildren and possibly more remote issue are to take per stirpes or per capita with the children of the first generation.   Can the court be properly expected to go as far as to read the word "children" as meaning "children of the first degree and if any child of the first degree shall predecease me then to the children of any such predeceased child, these grandchildren taking per stirpes and not per capita" or "these grandchildren taking per capita with the children of the first degree and not per stirpes"?   This would seem to be stretching the power of construction a little too far.   Moreover, the express direction in the proviso is that the "children" which are there made the recipients of that gift are to take "in equal shares while there shall be more than one."   Did the testatrix mean

that the children of the first degree and the issue of later degrees are all to take in equal shares? Would such an interpretation of her words be in consonance with the suggested "scheme of justice, fairness and equality," bearing in mind that the children of the first degree, thus cut down to share per capita with the numerous grandchildren, might themselves well have a large number of children of their own dependent upon them for their support? In this same forty-eighth clause the testatrix, when she does carefully distinguish (with reference to the corpus) between "children" of her brother and sisters and "children of the children" of those sisters and brother, gives careful direction that the grandchildren are to take "per stirpes by right of representation."

Fifth. In the forty-eighth clause, when dealing with the disposition of the corpus after the death of the last survivor of the brother and sisters, the testatrix very distinctly shows that she knew and had in mind the distinction between children of the brother and sisters and the children of those children and that, therefore, when she used the word "children" of the brother and sisters in that clause she meant offspring of the first generation only and did not mean or include grandchildren or any subsequent issue. Her direction is that on the death of the last survivor of her brother and sisters, the residue of her property is to go "to all of the children then living" of the brother and sisters, "said children taking per stirpes, the children if more than one of my brother or any sister taking in equal shares among themselves, and to the children then living of any child then deceased of my brother or sisters taking per stirpes by right of representation." If, in the proviso which is the subject of this suit, the testatrix had meant to make provision for children of deceased children of the brother and sisters, she would have said so just as clearly as she did in the later

part of the same paragraph when disposing of the corpus of the residue. In the face of the provision as to the corpus of the residue no other inference or conclusion would be justified, in the absence of clear indications to the contrary in other parts of the will; and there are no such indications.

Sixth. In paragraph seventh of the will a bequest of three hundred dollars is made "to each of the children of the said William Robinson, who shall survive me;" and in paragraph ninth a bequest of five thousand dollars is made to Ella Henkenius with the proviso that "if she shall not survive me" then "to the children of her, the said Ella Henkenius, who shall survive me." The word "children" in each of these two clauses would seem to have been used in its natural and ordinary sense of offspring of the first generation. No reason appears to the contrary; and yet if the "plan of fairness, justice and equality" is to be successfully invoked at all it should result in enlarging the payments of three hundred dollars to each of any surviving grandchildren as well as to include grandchildren of Ella Henkenius as recipients of the five thousand dollars.

Seventh. In paragraph twenty-third of the will the testatrix bequeaths the sum of three thousand dollars "to each of the children of Mrs. Bathe, * * * who shall survive me," with the further provision that "if any of the children of the said Mrs. Bathe die before me leaving a child or children, I give and bequeath to such grandchild or grandchildren of the said Mrs. Bathe (in equal shares if more than one) the sum that his, her or their parent would have taken if he or she had survived me." Here is another striking illustration of the fact that the testatrix, at the time of making final disposition of her property, had well in mind the distinction between children and grandchildren and used the word "children" as

meaning offspring of the first generation.   It illustrates further the fact that she appreciated that if grandchildren were to be provided for at all there must be some direction not only as to whether they were to take equally as among themselves but also as to whether or not they were to take per stirpes.   Her statement in this instance is that the grandchildren were to take "the sum that his, her or their parent would have taken if he or she had survived me."   This clause is in contrast with the provisions made in paragraphs seventh and ninth in each of which, as above noted, the word "children" is used without any reference to children of those children or grandchildren.

Eighth.   In paragraph twenty-eighth a bequest of five hundred dollars is made "to each of my nieces and nephews who shall survive me, the children of my brother and sisters, namely, Mark P. Robinson, Victoria Ward, Matilda Foster, A. (Watty) Jaeger and Lucy McWayne * * * .   This being in addition to any other legacy or benefit coming to any one of my said nieces and nephews under this will."   In this paragraph the word "children" (of the brother and sisters) is clearly used as referring to the offspring of the first generation only, for she explains that by these children she means her own "nieces and nephews."   In addition she shows by this provision a willingness and a desire to limit this five hundred dollars per capita gift to those only of the nieces and nephews who should survive the testatrix, without at the same time making the same or any other provision for any of the descendants of the nieces and nephews who might fail to survive the testatrix.   The sum bequeathed may be small but the principle is the same.

Ninth.   In paragraph thirty-sixth of the original will a bequest of three thousand dollars (altered to four thousand by the fifth paragraph of the third codicil) is made to Mrs. J. D. Walker, "or to her heirs."   In paragraphs

fortieth and forty-first of the original will, certain personalty and certain lands are given to the sister, Lucy McWayne, "or to her heirs." In paragraphs first and second of the first codicil, certain personalty and lands are given to Lucy McWayne "or, if she shall not survive me, to her heirs who shall survive me." Similar alternative provisions to a brother and to two sisters or to the heirs of each "who shall survive me" are made in paragraphs second, third and fourth of the first codicil. While the word "children" is not used in any of these clauses, they are, nevertheless, not without significance as tending to show that in some instances she chose to make the alternative provision run in favor of all those who might be the heirs of the predeceasing brother or sister and in other provisions chose to limit that benefit to those only of such heirs who might be alive at the time of the death of the testatrix. There is the further significance that these clauses, which limit the alternative gift to those only of the heirs (of the brother or sister) who shall survive the testatrix, show a willingness and desire on the part of the testatrix to exclude any grandchildren of a brother or sister who, although being an heir of the brother or sister, might predecease the testatrix.

Tenth. In paragraph tenth of the will, the testatrix gives one thousand dollars to Samuel Clesson Jaeger, son of James E. Jaeger who was the son of Mrs. A. (Watty) Jaeger, without making the same or any similar provision for the other children of James E. Jaeger. Samuel Clesson Jaeger would seem to have been the fourth child of James E. Jaeger and all are now surviving.

Eleventh. The will, upon its face, bears strong evidence of having been prepared by attorneys familiar with the well settled legal as well as ordinary meaning of the words "child" and "children" as well as of other words and expressions used throughout the will. Carelessness

and inartificiality of expression are not apparent in the instrument.

Whether, in the proviso which is the subject of this suit, the omission to make provision out of the income for the children of any non-surviving children of a brother or sister was due to the thought that those who would take under that proviso would render aid if necessary to those who would not so take, or was due to what those who should succeed her might regard as a mere whim or caprice, or was due to oversight, is immaterial. There was no legal duty on the part of the testatrix to make to these grandchildren any gifts out of the income of the residue. The moral duty involved, if any there was, and as to this opinions might well differ, was at best very slight. They were not the grandchildren of the testatrix. They were the grandchildren of her sister and only grandnephews and grandnieces of the testatrix. The law gave the testatrix the power to dispose of her property as she pleased. She has disposed of it in language that has a well settled primary and ordinary meaning both in legal instruments and in every-day use. Her wishes as expressed in this testamentary document must be carried out without modification.

The trustees are instructed that in the proviso under consideration the word "children" is used as denoting offspring of the first generation and that, therefore, the income involved which went to Mrs. A. (Watty) Jaeger in her lifetime is now the property of Iwalani Jaeger Robinson and her brother Samuel Allen Jaeger in equal shares. Decree accordingly.

*H. Holmes,* for petitioners, filed no brief and presented no argument.

*A. G. M. Robertson* (*Robertson & Castle* on the briefs) for respondents Bernice Jaeger and others, minors, and the Guardian Trust Co., Ltd.

*B. S. Ulrich* (*Thompson, Cathcart & Ulrich* on the brief) for respondent Marion Jaeger, a minor, and her guardian.

*W. F. Frear* (*Frear, Prosser, Anderson & Marx* on the briefs) for respondent Samuel Allen Jaeger and his guardian.

*S. C. Huber* (*Huber & Kemp* on the brief) for respondent Iwalani A. Robinson.