In the Matter of the Trust Estate created under Deed of Trust by ANTONIO J. LOPEZ by Indenture of Trust dated February 27, 1905

NO. 6743

S. P. NO. 3571

NOVEMBER 24, 1981

RICHARDSON, C.J., OGATA, MENOR, LUM AND NAKAMURA, JJ.

## OPINION OF THE COURT BY RICHARDSON, C.J.

In this appeal we are called upon to interpret certain trust provisions in the Deed of Trust executed on February 27, 1905 by the deceased, Antonio J. Lopez. The provisions in question concern the distribution of income prior to the termination of the trust and the distribution of the corpus upon said termination.

Respondents-Appellants, Anthony J. Lopez, et al., appeal particularly from paragraphs 1(a), 1(b), 2(b) and 3[1] of the lower court's

---

[1] The specific paragraphs of the court's order read as follows:

Paragraph 1:

(a) For all purposes under the aforesaid trust, the term "child or children" shall mean issue, i.e. lineal descendants, and the term "in equal shares" shall mean per stirpes by right of representation.

(b) Until the death of Richard Lopez, the survivor of Antone J. Lopez, the younger, Clara Lopez, Manuel J. Lopez, Rosa Lopez, Caezer Lopez, Richard Lopez, Christina Lopez and Joseph P. Medeiros, herein called the "eight named beneficiaries", the right to income held by any income beneficiary shall, upon such beneficiary's death, descend to the issue of such beneficiary, and such issue shall take such income right per stirpes by right of representation. Adopted persons will be treated as issue for these purposes.

Paragraph 2:

(b) Upon the death of Richard Lopez, and in conformity with this Court's decision respecting distribution of income rights, the Trustee is directed to distribute the corpus, free of trust, so that a per stirpes share goes to each individual

Order Denying Motion for Summary Judgment and Determining Trust's Provisions, Denying Objections Thereto, and Awarding Fees, filed August 3, 1977. The court below ruled that the terms "child" and "children" in the trust meant issue or lineal descendants. It further construed the phrase "in equal shares" to effect a per stirpital distribution of income and corpus among the lineal descendants of certain named beneficiaries.

After closely examining the content of the trust document to determine the intent of the Settlor and reviewing the relevant legal precepts, we reverse the decision of the lower court, holding that the terms "child" or "children" refer to the immediate offspring or issue of the first generation, that the income shall be distributed per stirpes to the issue of the first generation, and that the corpus shall be distributed per capita among the Settlor's grandchildren who are living upon the termination of the trust.

I.

The Settlor, Antonio J. Lopez, created an inter vivos trust which provided, *inter alia,* that after his death, the income was to be paid to his wife and to eight named individuals: his seven children and one godchild[2] (referred to hereafter as the "Named Eight").

Prior to the termination of the trust, the "children" of any deceased member of the Named Eight were entitled to take their

---

then alive who is an issue of the first generation of one of the eight named beneficiaries, and so that a per stirpes share goes to the then surviving issue, per stirpes by right of representation, of each individual then deceased who was an issue of the first generation of one of the eight named beneficiaries and who himself or herself left issue surviving at the death of Richard Lopez. Adopted persons will be treated as issue for these purposes.

Paragraph 3:

That the objections to the foregoing instructions and the Order Denying Motion for Summary Judgment and Determining Trust's Provisions filed March 30, 1977, shall be and the same are hereby denied.

[2] The trust instrument clearly demonstrates that the Settlor intended that his godchild, Joseph P. Medeiros, "shall be treated on an equality" with his seven children. Moreover, this court has repeatedly held that an adopted child is in all respects a child of the adopter, as much as a natural child, unless expressed otherwise. *See generally In re Estate of Farrington,* 42 Haw. 640 (1958).

parent's share of the income. The specific provision describing the distribution of income stated:

> (e) to the said Kaahanui Lopez, during her life, of the said annuity of $600.00 until the said mortgage shall be paid and the annuity of $900.00 thereafter during the life of the said Kaahanui Lopez and subject to the said payments, to pay the said rents, issues and profits to the said Antone J. Lopez, the younger, Clara Lopez, Manuel J. Lopez, Rosa Lopez, Caezer Lopez, Richard Lopez, Christina Lopez and Joseph P. Medeiros and to the survivors or survivor of them during their, his or her lives or life in equal shares while there are more than one of them, provided however, that if any of the said [Named Eight] shall die leaving a *child* or *children* surviving him or her, than in every such case, such last mentioned *child,* or *children,* shall, so long as any of the [Named Eight] shall be living, take the share of the said annual income which *his, her or their* parent would have taken if such *parent* had continued to live, *in equal shares if more than one.* (Emphasis added.)

Upon the death of the last survivor of the Named Eight, the corpus was to be distributed among "all of the children" of the named beneficiaries. The provision for the distribution of the trust corpus read in part:[3]

> AND IT IS HEREBY further agreed and declared that after the death of the last survivor of the [Named Eight], an undivided two-thirds of the said premises shall be held by the Trustee or his successors in trust.
>
> IN TRUST for *all of the children* of the [Named Eight] who shall be living at the time of the death of the last survivor of the [Named Eight] *in equal shares if more than one.* (Emphasis added.)

Only one of the Named Eight, Richard Lopez, was alive at the inception of this case, but he died during the pendency of this appeal. Hence the corpus must now be distributed among the rightful beneficiaries.

Another of the Settlor's children, Clara Lopez Tavares (referred to in the trust deed as Clara Lopez), died on May 28, 1942, survived

---

[3] The lower court found that the trust for "all of the children" of the Named Eight was a passive trust under which the trustee's duty was merely to distribute the corpus of the trust to the proper beneficiaries. Accordingly, the trust was to terminate on the death of Richard Lopez.

by three children: Nina A. White (still living), and Edward Abdul, Sr. and Daniel L. Abdul (both now deceased). Edward Abdul, Sr. died on December 4, 1972, being survived by his widow, Aurelia Fern Abdul, and a minor adopted child, Edward Abdul, Jr. In his Last Will and Testament, Edward Abdul, Sr. made the following disposition of his residuary estate:

> *Third:* I give, devise and bequeath all the rest, residue and remainder of my estate, real, personal and mixed, wheresoever situate and of every kind and nature, and any property over which I may possess any power of appointment by Will or otherwise, hereinafter called my "residuary estate," to my wife, Aurelia Fern Abdul, absolutely, if she shall survive me.

In view of the foregoing testamentary provision, Bishop Trust Company, Ltd. (hereinafter Petitioner), successor trustee of said trust established by Antonio J. Lopez, was in doubt as to whether Aurelia Fern Abdul was entitled to the share of income formerly payable to her husband, Edward Abdul, Sr., by virtue of the Lopez trust. Additionally, Petitioner questioned whether either the minor adopted child of Edward, Sr. or the other surviving descendants of Clara Lopez Tavares have any rights to such income under the Lopez trust. Finally, Petitioner was uncertain as to the distribution of the corpus upon the termination of the deed of trust. Petitioner thus filed a Petition for Instructions on October 12, 1973, in the Circuit Court of the First Circuit.

On September 21, 1976, Petitioner moved the court for an order granting partial summary judgment pursuant to Rule 56, H.R.C.P. Petitioner urged the court to rule that Edward Abdul, Sr.'s right to income was transferred to his wife Aurelia Abdul; that her assignment of this income right to her son, Edward, Jr. was effective until the termination of the trust; and that prior to the termination of the trust, any grandchild of the Settlor who had a right to share in the income from the trust could convey such a right either by an inter vivos disposition or by will.

Several Respondents[4] comprised of the Settlor's great-grandchildren opposed Petitioner's motion for partial summary

---

[4] Respondents included J. Woolley and Chad R. Woolley, grandchildren of Richard Lopez; Corinna Gay Abdul, Danette Abdul Guenther, Daniel L. Abdul, Jr., Cassandra A. Killion, Edward W. Abdul, Jr., grandchildren of Clara Lopez; and guardian ad litem for unborn persons.

judgment. Their memoranda in opposition basically suggested that the income and corpus of the trust should be distributed per stirpes among the lineal descendants of the Settlor.

On February 15, 1977, Respondents Anthony J. Lopez and other grandchildren and great-grandchildren of the Settlor submitted an objection to a proposed order denying Petitioner's motion for summary judgment. These respondents basically concurred with Petitioner's motion and added that the corpus should be distributed per capita among the then living grandchildren of the Settlor at the end of the trust.

The court ultimately rendered an order denying Petitioner's motion for summary judgment and Respondents-Appellants, Anthony J. Lopez, et al., have appealed.

## II.

We first consider whether the terms "child" and "children" in the Lopez trust were intended to refer to immediate offspring rather than the issue and lineal descendants of the Named Eight. In other words, did the Settlor intend to effect a general distribution of income and corpus among all his lineal descendants or simply a distribution only among the Named Eight and their immediate offspring?

A fundamental rule is that the intention of the settlor as expressed in a trust instrument shall prevail unless inconsistent with some positive rule of law. *Bishop Trust Co. v. Cooke Trust Co.*, 39 Haw. 641 (1953); *Walker v. O'Brien*, 35 Haw. 13 (1939). Moreover, in construing a trust document to determine the settlor's intent, the instrument must be read as a whole, not in fragments. *In re Weill's Trust Estate*, 48 Haw. 553, 406 P.2d 718 (1965).

We have examined the trust instrument in its entirety and it indicates that the only persons who are entitled to either income or a share in the corpus after the deaths of the Named Eight are their "children."

The law is well settled in Hawaii that the word "children" in its primary and common meaning is limited to descendants in the first degree, the immediate offspring of the parent. Unless a clear indication of a contrary intention appears from the context, the term "children" must be taken in this sense and not as including grand-

children. *Wodehouse v. Robinson,* 27 Haw. 462 (1923); *accord, Estate of Hartwell,* 23 Haw. 213 (1916); *see generally* 104 A.L.R. 282 (1936); 14 A.L.R.2d 1242 (1950); Restatement of the Law, Property § 285 (1940).

The case of Wodehouse v. Robinson illustrates this general rule. There, the forty-eighth clause of Testatrix's will read in part as follows:

"provided, however, that if my brother or any of my sisters shall die at any time leaving a *child* or *children* surviving him or her then in every such case and until the death of the last survivor of my brother and sisters such *child* or *children* (in equal shares while there shall be more than one) shall have the use, benefit, enjoyment and income of and from my said Trust Estate, which his or her or their parent would have taken if living, . . ." (Emphasis added.)

27 Haw. at 467-68. The main issue concerned the meaning of "child" or "children." The court held the terms "child" and "children" to mean immediate offspring or descendants of the first generation and not more remote descendants.[5] It opted for the primary and ordinary meaning of the terms because the context in which the terms were used did not mandate a contrary interpretation. In addition, the court reasoned that if the word "children" was read as including grandchildren, then the word "parent" as used by the decedent would likewise be subject to a strained construction. The primary and ordinary meaning of "parent" should be one who begets immediate offspring.

The instant case closely resembles the situation in *Wodehouse.* The testatrix there died on February 11, 1914. Mrs. Jaeger, her sister, died on November 29, 1921, survived by two children. Mrs. Jaeger had two other children, James and Henry, who predeceased

---

[5] The *Wodehouse* court further quoted 2 Underhill on Wills, § 548, as follows:

"The word 'children' in its primary meaning is limited to descendants in the first degree, i.e., the immediate issue or offspring of the parent. This is the technical and legal signification of the term, agreeing with its ordinary sense, and, in the absence of a clear indication of a contrary intention in the context, it must be taken in this sense and not as including grandchildren. And it will require express words, or very strong and necessary implication arising from the will itself, to show that the testator intended to include grandchildren in a gift to children *simpliciter.*"

27 Haw. at 464-65.

her, the first survived by five children and the second survived by one child. The question raised was whether the income payable to Mrs. Jaeger during her lifetime was now payable in full to her two surviving children, or payable in part to Mrs. Jaeger's grandchildren (those six children of her predeceased sons, James and Henry).

In both cases, the income was left to certain named individuals and to the "child or children" who survived those named individuals. Both trusts provided that if a named individual died prior to the termination of the trust, the surviving "child or children" would take the share which *his, her or their parent* would have taken if living. The use of the word "parent" in both cases indicates to us that the settlor or testator intended the term "children" to include only issue of the first generation. Following *Wodehouse v. Robinson, supra,* which cites *Estate of Hartwell, supra,* with approval, we are inclined to hold the term "child or children" to refer to immediate offspring or issue of the first generation.

Respondents-Appellees (hereinafter Appellees), however, argue the ordinary meaning of "children" is inapplicable because the instant appeal presents an exceptional situation wherein the term "children" means issue or lineal descendants.

There are three basic exceptions to the general rule that the term "children" means the immediate offspring of the parent. *See generally* 14 A.L.R.2d 1250 (1940). The third exception covers a situation where a construction of the term "children" to include grandchildren is required by applicable statutory provisions. *See Berry v. Brokeshoulder,* 162 F.2d 651 (10th Cir. 1947). This statutory exception neither was raised on appeal nor can be found in our statutes and we do not address this exception here.

The first exception occurs where an intention that the terms "child" or "children" shall include grandchildren is manifest from other provisions of the will (or trust) or from the whole dispositive scheme described in the instrument. *See Estate of Hartwell, supra; see generally* 14 A.L.R.2d 1250 (1940). Appellees contend this exception applies here, citing *Estate of Kanoa,* 47 Haw. 610, 393 P.2d 753 (1964); *Trust Estate of Meek,* 42 Haw. 335 (1958); *Kahananui v. Maunakea,* 20 Haw. 114 (1910). We disagree. There is nothing in the language of the trust suggesting that Antonio Lopez did not use the word "children" in its ordinary sense. Hence, Appellees have misplaced their reliance on this first exception.

The second exception applies where the will or trust would remain inoperative unless the words "children" and "child" are extended beyond their natural and ordinary meaning. *See Estate of Hartwell, supra; see generally* 14 A.L.R.2d 1258 (1940). Here, the trust would not be inoperative if "children" receives the ordinary construction. There are at least thirty children of the Named Eight who would take if the term "children" is given its common meaning.

We, therefore, hold that the terms "child" and "children" throughout the Deed of Trust of Antonio J. Lopez are limited to their ordinary and common meaning, being issue of the first generation or immediate offspring. Given this limited interpretation of the terms in question, we now consider the manner in which the income and corpus shall be distributed.

### III.

The second issue involves the distribution of income prior to the termination of the trust. Before the last survivor of the Named Eight died, what rights did a "child" or "children" of the deceased named beneficiaries have in the trust income?

The pertinent trust language states:

> that if any of the said [Named Eight] shall die leaving a child or children surviving him or her, then in every such case, *such last mentioned child, or children, shall, . . . take the share of the said annual income which his, her or their parent would have taken if such parent had continued to live, in equal shares if more than one.* (Emphasis added.)

Appellants contend that any of the grandchildren of the Settlor who is a recipient of the income right prior to the termination of the trust may dispose of that right by inter vivos transfer or by will, citing *Walker v. O'Brien,* 35 Haw. 13 (1939).

We agree that the opinion in *Walker v. O'Brien* is dispositive of this issue. We held in *Walker* that upon the death of the settlor his children then living had a vested right in the income which would last until the time of final distribution of the corpus. Furthermore, when one of the children died the right to receive the income passed to his or her estate; it was not applied to augment the shares of the other children.

The *Walker* opinion reasoned that the settlor "irrevocably" conveyed to each of his four children who survived him a one-fourth

share in the net income of his trust estate as tenants in common for the duration of the trust. Such child was free to make an inter vivos or testamentary disposition of the income right. *Id.* at 17. The court invoked the rule that "a personal annuity given for a term of years or *for the life of another* does not terminate at the death of the annuitant but passes to his personal representatives."[6] (Emphasis added.)

The facts in *Walker v. O'Brien* were fairly simple. One of the settlor's daughters, May Clark, survived the settlor but later died leaving surviving her a husband and an adopted child. Mrs. Clark left a will under which she bequeathed all of her estate to her husband and her adopted child in equal shares. The last surviving child of the settlor filed a suit to have the court construe the trust instrument. The plaintiff's contention was that May Clark's right to or with respect to the share of the income terminated upon her death and that she had no power to dispose of it by will or otherwise.

The resemblance between the disposition of income in the *Walker* trust and the disposition of income in the Antonio J. Lopez trust is critical. In *Walker,* each of the settlor's four children had a right as tenant in common to one-quarter of the income until the trust ended; in the Lopez trust, each grandchild of the settlor has a per stirpes right[7] as tenant in common to the one-eighth share his or her parent held in the trust income until the trust ends. Each income taker in *Walker* was authorized to convey his right to the income, either inter vivos or by will, until the trust terminated; similarly, and

---

[6] In relying on *Walker v. O'Brien,* 35 Haw. 13 (1939), it is clear to this court that Appellants are not advocating an absolutely indefeasible right to the trust income in the grandchildren of Antonio Lopez. In the *Walker* opinion, the court stated:

> In the present case a one-fourth interest in the net income was conveyed to each of the Cummins children who survived their father, not as a joint tenant of the other children with the right of survivorship but as a tenant in common with them. The defeasance of this right would of course occur at the death of the last of the Cummins children at which time the trust would terminate and distribution of the trust corpus would be made as required by the trust deed.

*Id.* at 19.

[7] The language in the Lopez trust that "such last mentioned child, or children, shall . . . take the share of the said annual income which *his, her or their parent would have taken*" (emphasis added) clearly effects a per stirpital distribution. In other words, a child or children would take by representation through their parent. Moreover, the reference to *"such last mentioned child, or children"* (emphasis added) certainly reinforces Settlor's intent to make the children of the Named Eight the ultimate beneficiaries of the trust income.

there is nothing in the facts or in the law to compel a different conclusion, each grandchild income taker in the Lopez trust should be authorized to convey his right to the income, either inter vivos or by will, until the trust terminates.

Hence, based on our holding in *Walker v. O'Brien,* we conclude that Edward W. Abdul, a grandchild of the Settlor, had a vested right to the income from the trust until the trust terminated. In addition, he had a right to dispose of such interest by either inter vivos conveyance or by his will.

As to Appellees' position, we reject their argument that *In re Trust Estate of Holt,* 42 Haw. 129 (1957), articulates the governing precept for the issue at hand. Relying on *Holt,* Appellees contend that the income should be distributed per stirpes among the lineal descendants of the Named Eight. Moreover, Appellees aver that the Named Eight had only a life interest in the trust income during the term of the trust and could only pass a life interest to their children.

The provisions of the will of George H. Holt, however, relating to the disposition of income and corpus are significantly different from the provisions in the trust of Antonio J. Lopez. In *Holt,* the settlor provided that the trust income be paid "to all of *my heirs in equal shares per stirpes.*"[8] The settlor clearly directed payment of income to his "heirs" in equal shares per stirpes.[9] The court in *Holt* was not compelled to strain the applicable rules of construction to find the settlor's intent. On the other hand, the trust language in the instant case, and in *Walker v. O'Brien,* does not contain the word

---

[8] The applicable paragraph of the will in *Holt* provided as follows:

"3rd: All the rest, residue and remainder of my estate I give, devise and bequeath to my trustees hereinafter named, and their successor or successors in trust: In trust to hold, care for and manage the same for as long a period as is legally possible; . . . and during the pendency of said trust to pay the income from the same to my said wife during her life, or so long as she shall remain my widow, and after her death or future marriage, to stand possessed thereof, in trust as aforesaid, and to pay the income to all of *my heirs in equal shares per stirpes,* and upon the final ending of the term of said trust, as aforesaid, to divide my trust estate among the persons entitled to the same at that time under the law per stirpes."
42 Haw. at 130.

[9] The court in *Holt* observed that:

When a gift is made in a will to heirs of a designated person, the word "heirs" means persons who succeed to the property of such designated person under the law which governs intestate succession.
*Id.* at 132-33.

"heirs." Instead, Antonio Lopez specifically provided that the "child" or "children" surviving each of the Named Eight shall take his, her or their parent's share of the trust income for as long as any of the named beneficiaries are alive.

We hold, therefore, that *Walker v. O'Brien* remains the law in Hawaii and is dispositive of the instant issue.

## IV.

The final issue concerns the distribution of the corpus of the Lopez trust. Should the corpus be distributed per capita or per stirpes among the grandchildren of Antonio J. Lopez?

The relevant provision provides that two-thirds of the corpus shall be held in trust *"for all of the children* of the [Named Eight] who shall be living at the time of the death of the last survivor of the [Named Eight] in equal shares if more than one." (Emphasis added.)

The use of the phrase "for all of the children of the [Named Eight]" clearly indicates to this court that the Settlor intended to treat these "children" as a single group. They are all related in the same degree to the Settlor who would be their grandfather. The trust language fails to evince any unequal treatment of the grandchildren by the Settlor.

Accordingly, the disposition of the corpus in the Lopez trust falls precisely within the example of a per capita distribution of a class gift. Section 300 of the Restatement Property reads:

> When a conveyance creates a class gift by a limitation in favor of the *"children,"* "grandchildren," "brothers," "sisters," "nephews," "nieces," "cousins," "brothers and sisters," or "nephews and nieces" of a designated person, or by some other similar single group designation, and the membership in such class has been ascertained in accordance with the rules stated in §§ 285-299, then distribution to the members of the class is made upon a per capita basis except to the extent that a different mode of distribution is required either
>
> > (a) for the effectuation of another and different intent of the conveyor found from additional language or circumstances; or
> >
> > (b) by the rule stated in § 302 with respect to a limitation in favor of a subordinate class substituted as the takers of the

share which would have been taken by a member of the main class, if he had lived to the time of distribution.[10] (Emphasis added.)

Professor Powell's view as stated in 3 Powell on Real Property, paragraph 368, is in harmony with the restatement citation referred to above.[11] Essentially, Powell and the restatement emphasize three key elements which can be found in the instant trust language. First, a class gift has been created in favor of the children of the named beneficiaries. Second, the members of the class stand in identical relation to the Settlor. Third, the instructions are such that distribution shall be in "equal shares if more than one."

The third factor strengthens the preference for a per capita distribution, especially where the first two elements are present.

---

[10] Illustration 2 under Section 300 is applicable to the Lopez trust:

A has three sisters B, C and D and no brothers. B has three children E, F and G. C has two children H and I. D has one child J. A effectively devises all of his assets "to my nephews and nieces absolutely and forever." In accordance with the rule stated in § 294 the class entitled to the decedent's assets is ascertained to consist of E, F, G, H, I and J. Each of these six receives a one-sixth absolute ownership in the total assets distributable as the estate of A.

[11] According to Professor Powell:

When a class gift has been created by a limitation in favor of the children, grandchildren, brothers, sisters, nephews, nieces, cousins of a designated person, or by a limitation to "B and his children," or to "B and the children of C," or to "the children of B and the children of C," or by some other phraseology of similar import, distribution is made on a per capita basis except in two situations hereinafter set forth. Under such a distribution the total subject matter of the class gift is divided into as many shares as there are members of the class and one of these shares allocated to each such member. . . .

Under some limitations the group term employed makes well nigh inevitable a conclusion that equality of distribution was intended. *This is true when the intended takers are described by a single group term which includes only persons of a single generation all of whom are identically related to the conveyor* . . . When the class gift includes among the takers one or more named persons, or is in favor of two or more groups, or combines these complexities, the per capita mode of distribution has been utilized in cases

(1) where all class members bore identical relations to the conveyor;

(2) where all class members were of the same generation but some were relatives of the conveyor by blood and others were relatives of the conveyor by marriage only;

(3) where some member or members of the class were one generation further removed than others from the conveyor; and

(4) where the class members did not fit any of the three categories just described.

3 Powell on Real Property, ¶ 368 (1979) (emphasis added).

Words such as "in equal shares," "divided equally," and "share and
share alike" usually import equal treatment, or a division per capita.
*See Lidgate v. Danford,* 23 Haw. 317 (1916); *see generally Houts v.
Jameson,* 201 N.W.2d 466 (Iowa 1972); *Will of Dow,* 390 N.Y.S.2d 721
(1977); *G. Bogert, Trusts, Trustees,* § 182, 340 n.17 (1979).

Consequently, there is little doubt that Antonio J. Lopez in-
tended a per capita distribution of the corpus among the children of
the Named Eight.

Appellees, on the other hand, contend that the corpus must be
distributed per stirpes between the lineal descendants, or issue, of
the Settlor. Appellees offer several arguments to reach this conclu-
sion. Unfortunately, we find these contentions unconvincing.

First, Appellees contend that by allowing a per capita distribu-
tion only among the immediate offspring of the Named Eight would
work an inequitable or "absurd result." In short, the great grand-
children of the Settlor would be disinherited under such interpreta-
tion.

This court, however, is not called upon to conjecture why the
Settlor wrote the trust the way he did. The only possible inequity
here is that certain Appellees will not receive a share of the trust that
they might have received as heirs-at-law. Nevertheless, a settlor is
not obligated to dispose of his property in accord with the laws of
descent and distribution. *Estate of Hartwell, supra.*[12]

Second, Appellees stress the theory that courts generally favor a
per stirpes distribution as opposed to a per capita distribution.

We find that this point is certainly not a rule to be applied in all
cases, particularly when it is contrary to the clear intent of the settlor.

---

[12] The opinion in *Hartwell* stated:

We cannot sustain the contention of counsel that "the equity of the case"
demands that the word "children," as used in this will, should be construed to
include a grandchild, the issue of a deceased child, on the theory that otherwise
one who was an heir at law of the testator at the time the will was written will be
disinherited. The only inequity suggested is that the appellant did not get the
share of his grandfather's estate which he would otherwise, as an heir at law, have
been entitled to had the grandfather died intestate.

23 Haw. at 216-17.

Testator had the right to leave appellant unprovided for in his will, without
reason. We are not called upon to conjecture why he adopted that course.

*Id.* at 216-18.

We stated in *Peters & McLean v. Vannatta et al.*, 41 Haw. 249 (1955), that:

> The cases are countless and seemingly in hopeless confusion as to the preference of courts for per-stirpes or per-capita distribution[.]

*Id.* at 265. We further recognized our duty in *Vannatta* to ascertain the intention of the testator as expressed in the will. This duty applies to a trust situation as well.[13] We find the Settlor's intentions here are clear as to the distribution of the corpus among his grandchildren. The language expresses a division per capita.

Finally, Appellees rely upon the quotation from *Estate of Kanoa, supra,* that "[t]he fact that the income is distributable per stirpes is sufficient grounds for presuming a like distribution of the corpus." *Id.* at 624. Based on this statement, Appellees advocate a per stirpital division of the corpus in the instant case.

In *Estate of Kanoa*, the portion of the will of the testatrix containing the income and corpus provisions read as follows:

> " 'And after the death of Kaupiko (k) and Kaluaihalawa (k), and the attainment of majority by Hoomalu (w), Kaleipualiilii (w), Eva Kapualanilehua (w), and Lukela (k), I direct my Trustee to equally divide all of the income from my estate among Kanehiwa (k), Hoomalu (w), Kaleipualiilii (w), Eva Kapualanilehua (w) and Lukela (k), and should any of them die without *"keiki"*, then the portion of the income of the one who died without *"keiki"* shall be equally divided among the survivors, but if any of them die leaving any *"keiki ponoi"* surviving then the portion of the one who died shall be divided among the *"keiki"* who are living. And after the death of Kanehiwa (k), Hoomalu (w), Keleipualiilii (w), Eva Kapualanilehua (w), and Lukela (k), I direct my Trustee to equally divide all of my estate among the *heirs of their body*. Provided, however, should any of them, that is, Kanehiwa (k), Hoomalu (w), Kaleipualiilii (w), Eva Kapualanilehua (w) and Lukela (k), die without *"keiki"*, then the heirs of the body of those above

---

[13] The rules of construction that apply to written instruments, be it a contract, deed or will, by and large apply to the interpretation of trust instruments. *Re Work Family Trust*, 260 Iowa 898, 151 N.W.2d 490 (1967); *Hart v. First National Bank*, 237 Miss. 1, 112 So. 2d 565 (1959).

described shall receive the estate, which shall be equally divided among them.' "

*Id.* at 614-15 (emphasis added). The court in *Kanoa* found that testatrix used the word *"keiki"* in the inclusive sense of "a descendant of any generation." In addition, the court stated that if testatrix had intended "heirs of the body" to mean *"keiki"* in the limited sense of immediate children, there would have been no reason to bring in "heirs of the body" to denote children, testatrix instead would have continued to use *"keiki."*[14] Finally, the court found that the general testamentary plan clearly called for a per stirpital distribution of income and corpus. *Id.* at 623.

In the instant case the trust clearly calls for a per stirpes distribution of the income. The language provides that the income which "his, her or their parent" would have taken shall go to such child or children "in equal shares if more than one." We fail to find this language in the corpus provision. If the Settlor intended a per stirpital distribution of the corpus, he naturally would have used similar language as in the income provision. The fact that Settlor failed to do so is a significant indication of his intent for a per capita distribution of the corpus.

Thus after close examination of the trust instrument and application of certain guiding principles, we reverse the order of the lower court, and hold (1) the term "child and children" in the relevant trust provisions means immediate offspring or issue of the first generation; (2) the income shall be distributed per stirpes to the children of each member of the Named Eight who died before the termination of the trust; and (3) the corpus shall be divided among the surviving "children" per capita.

---

[14] The court in *Kanoa* recognized that the word *"keiki"* is susceptible of two meanings, to wit, "children" and "a descendant of any generation." *Id.* at 622. The court chose the second definition because *"keiki"* was used in conjunction with the words "heirs of the body" in the corpus provision. Hence the court distinguished *Wodehouse v. Robinson, supra,* holding:

"[T]hat the terms 'heirs of the body' and *'keiki'* were both used in the corpus provision in the all-inclusive sense of lineal descendants and not in the restricted sense of immediate children. In view of the Court's construction of 'heirs of the body' and *'keiki'*, the cases involving the English word 'children', such as *Wodehouse v. Robinson,* 27 Haw. 462 (1923), and *In the Matter of the Estate of Hartwell,* 23 Haw. 213 (1916), are not applicable."

47 Haw. at 623.

Reversed.

*Robert M. Ehrhorn, Jr. (Okumura Takushi Funaki & Wee* of counsel) for respondents-appellants Anthony J. Lopez et al.

*John H. R. Plews (Hoddick Reinwald O'Connor & Marrack* of counsel) for respondents-appellees Cassandra A. Killion et al.

*Eichi Oki* for respondent-appellee Guardian Ad Litem for Unborn Persons.

## DISSENTING OPINION OF LUM, J.

The majority concludes that the term "children" as used in the trust instrument refers to issue of only the first generation, that income shall be distributed per stirpes to issue of the first generation, and that the corpus shall be distributed per capita among the settlor's grandchildren who are living upon termination of the trust. I respectfully dissent. I would affirm the decision of the lower court and hold that the settlor's dispositive plan was to effect a per stirpital distribution of the trust income and of the corpus.

Intention of the settlor is the paramount consideration in the construction of a trust instrument and that intention is to be gathered from the whole instrument and is not limited to any particular clause. *In re Weill's Estate,* 48 Haw. 553, 406 P.2d 718 (1965).

Thus, in the case at bar, the settlor's intention is to be ascertained from a consideration of the trust instrument as a whole and not from its disjointed fragments. When looking at the Lopez trust instrument as a whole, the corpus provision must be read in a light consistent with the income provision. Beginning with the language in the income section, the settlor manifested an intent to substitute children for parents in the event the parents were deceased. This substitution was to continue beyond the first generation.

The settlor's testamentary plan contemplated a trust of long duration. There is nothing in the trust to indicate that the settlor intended that the trust should be narrowly interpreted to deprive great-grandchildren of their fair share. I conclude that the settlor used the term "children" to mean "issue" throughout the trust instrument.

This conclusion is supported by the well recognized rule that where language is equivocal a construction enuring to the benefit of

remote lineal descendants is preferred to one which favors immediate issue exclusively. *See In re Carnegie's Estate,* 397 Pa. 308, 155 A.2d 349, 353, 355 (1959), and *In re Clark's Estate,* 359 Pa. 411, 59 A.2d 109 (1948). *Also, Peters and McLean v. Vannatta,* 41 Haw. 249, 266 (1955).

In the case at bar, the general trust plan of the settlor was to provide for the issue of his "named eight" children. To be consistent with this general trust plan, the term "children" as used in both the income and corpus provisions of the instrument must be construed to refer to the lineal descendants of the "named eight." Further, as pointed out by this court in *Peters and McLean v. Vannatta, supra,* where the devisees bear different degrees of relationship to a testator or settlor, the per stirpes distribution must be upheld if the question of distribution is in doubt. *Id.* at 266. To be consistent with the settlor's general trust plan and with the rules governing equivocal language, the corpus distribution must be made on a per stirpital basis.