S. Samuel Di Falco, S.
The first of the series of questions submitted for determination in this proceeding for construction of the will involves the interpretation of its article Sixteenth in which the testatrix disposed of her residuary estate “ to such of my nephews and nieces who may survive me and to the lawful issue of every nephew or niece who may have died before *276 me leaving such issue me surviving, all in equal shares per stirpes Mrs. Dickinson was survived by six nieces and nephews and by the two children of a predeceased nephew who collectively constitute the class entitled to share the bequest. Uncertainty as to the method of admeasurement of their respective interests has brought the issue here.
The testatrix had three sisters and one brother who left children her surviving. Her sister, Alice Sands Church, was survived by an only child, Edgar M. Church, while each of the others was the parent of two. It is the position of Mr. Church that the direction for division of the gift “ all in equal shares per stirpes,” requires its apportionment on the basis of there being but four shares representing the number of siblings of the testatrix who left issue. The other members of the class insist on the contrary that the phrase has reference only to the issue of a predeceased niece or nephew with the result that the gift is divisible into sevenths with each of the six surviving nieces and nephews entitled to a full share and the two children of the only nephew who failed to survive the testatrix sharing equally in the seventh.
If Mr. Church’s position is to be accepted as correct, then the testatrix exercised a measure of discrimination and subtlety in the language of gift which is most unusual. It does, however, appear that these qualities characterize the bequest. It was of course entirely permissible for her to select as the recipient of her bounty any or all of the persons constituting the class and to give to them equal or unequal shares as she chose. She could, for example, have said: ‘ ‘ I give to the child or children of my sister, Alice Sands Church, one-quarter of my estate.” Mr. Church insists that that was the effect of the language employed in the maldng of this gift. His argument is based chiefly upon the fact that the phrase “ all in equal shares per stirpes,” is separated from its context by the use of two commas, with the result, according to him, that the phrase qualifies the gifts to the living nephews and nieces as well as to the issue of deceased nephews and nieces. In other words the establishment of the stirpes commences with the brothers and sisters of the deceased rather than with the nephews and nieces.
It is quite clear that the testatrix understood the nature of stirpital distribution because in the same article of the will in which the residuary estate was bequeathed, she directed that one of the shares left to a niece be held in trust for life with remainder over upon the beneficiary’s death “ in equal shares to and among my nephews and nieces then living and the issue *277 per stirpes of any nephew or niece who shall have predeceased my said niece, Elizabeth Graham Hyde.” The fact that there was such a distinction in the treatment of the principal and the subsidiary gifts acquires additional significance because of their juxtaposition in the text of the same dispositive provision. No doubt would exist that the establishment of the stirpes would commence with the nephews and nieces rather than the brothers and sisters of the deceased if the gift to that class had employed the same direction as was used by the testatrix in disposing of the remainder of the gift in trust to Elizabeth Graham Hyde. How then is it possible to ascribe to the testatrix an intention to create identical interests when she took such pains to describe those interests in wholly different terms? The court accordingly holds that the residuary estate is to be divided among the individuals comprising the class in the following proportions : One quarter to Edgar M. Church, one eighth to Philip Sands Graham, one eighth to Elizabeth Graham Hyde, one eighth to Sarah Sands Patterson, one sixteenth to Anne Sands Graham, one sixteenth to Philip Sands, one eighth to David Wark and one eighth to Charles E. Wark.
Construction is also sought of article Second of the will in which the testatrix left to her husband’s brother and sister, or the survivor, for life, “ all of the rest, residue and remainder of the property, real or personal, received by me under the Will of my late husband, John M. Dickinson.” The testatrix was in fact survived by her sister-in-law, who qualifies for this gift and takes a legal life estate, with the remainder passing to the lawful issue of the brothers and sisters of the testatrix’ husband. The question in connection with the bequest arises by reason of the fact that the testatrix segregated the property which she had received from her husband’s estate, maintaining two safe-deposit boxes in one of which she kept the property which she had acquired from that source. The parties are in agreement that the contents of this particular safe-deposit box consisted of certain specifically identifiable property which the testatrix had received under the will of her husband and certain property which could be identified as representing reinvestments of the proceeds of the sale or exchange of that property. It is the contention of Mr. Church that only those assets which can actually be shown to have come from the husband’s estate pass under this bequest, from which he claims is excluded the increment earned or gains realized upon reinvestments.
It has been widely observed and almost as frequently stated that no will has its brother. It can be said, however, that the *278 will which was the subject of construction by the Appellate Division of the Fourth Department in its decision in Matter of Potter (244 App. Div. 130, affd. 269 N. Y. 545) bore at the very least a striking resemblance to Mrs. Dickinson’s and gave rise to an identical problem. The gift in that case was described by the testatrix in the following terms: ‘ ‘ Sixth. I give, devise and bequeath all the rest, residue and remainder of the estate which came to me from my late husband unto my son Edward Walden Potter and unto my daughter Charlotte Potter Whitcher, share and share alike, to them and their heirs forever.”
Of this bequest the court said at pages 133-134: “We * * * have reached the conclusion that within the provisions of the sixth paragraph there is to be included not only the property which the testatrix received from her husband upon the settlement of her accounts as executrix, and which she still had at the time of her death in the same form in which she received it, but also all proceeds of sales of such property and all property acquired by exchange for such property or by purchase with the proceeds of sales of property so received by her from her husband, and all properties resulting from the sale and further investment of the proceeds of the sales of any such properties as far as the same can be traced. In other words, we are of the opinion that this provision was intended to cover the property received by the testatrix from her husband’s estate and all property into which she converted any such property so far as such conversion can be traced ’ ’.
Relying upon the reasoning of the cited case, the court holds that the gift provided for in article Second of the will carried with it all property identifiable as having had its source in the bequest made to the testatrix by her husband, including exchanges, profits and avails.
The next question framed by the pleadings concerns the obligation of the legal life tenant to furnish an undertaking as provided for in section 169-a of the Surrogate’s Court Act. The question depends for its answer upon whether or not the will contains an express dispensation of the requirement that a bond be furnished. It is the position of the life tenant that such a direction is to be found in that text of article Second in which the testatrix gave to the legal life tenant the right to “ have, hold, use and consume the same ” for life with only “the then remaining balance” passing to the remaindermen upon the termination of the life estate. The court concurs in the conclusion that a legacy with the breadth óf this bequest *279 carries with it its own exoneration as clearly as though it had been specifically spelled out. (Matter of Walter, 141 N. Y. S. 2d 49.) No bond will be required of the legal life tenant.
The fourth and final question posed by the petitioner is con- ■ cerned with the imposition of estate taxes and the obligation of the legatees to contribute to the discharge of the tax burden. Specifically the question is related to the property passing under article Second, constituting the legacy of the property left to the testatrix by her husband. Article Twentieth of the will provides as follows: ‘ ‘ Twentieth: I direct that any and all legacy, succession, estate or inheritance taxes payable by my estate, or in respect of any interest under this my Will, by reason of any State or Federal laws now or hereafter in force, be paid by my Executors out of my general estate as part of the expenses of administration thereof.”
In its direction to treat taxes as administration expenses, the will follows the pattern discussed by my predecessor, Mr. Surrogate Colliks, in Matter of Cromwell (199 Mise. 143, affd. 278 App. Div. 649, affd. 303 N. Y. 681). Since the bequest provided in article Second is specific, consisting as it does of the property identified as having been bequeathed to the testatrix by her husband (Matter of Potter, supra; Matter of Seeley, 50 N. Y. S. 2d 548), it is not charged with the payment of its proportionate share of the tax found to be due in light of the plain exoneration to which the testatrix gave expression in directing that all taxes attributable to ' ‘ any interest under this my Will, * * * be paid by my Executors out of my general estate as part of the expenses of administration thereof.” Matter of Bayne (102 N. Y. S. 2d 525), cited by the petitioner, has no applicability to the point at issue dealing as it does with apportionment of taxes within the residuary estate.
The court does not reach the question raised in the report of one of the special guardians as to the extent to which the life tenant has the power to exhaust the principal of the gift passing to her under article Second of the will. That question is presently academic (Matter of Mount, 185 N. Y. 162; Matter of Trevor, 239 N. Y. 6). Finally, the court has not felt it necessary or proper to permit the introduction of parol testimony in connection with the construction of the gifts under article Sixteenth, as suggested by the respondent coexecutor (Matter of Salterini, 7 Misc 2d 497, and cases therein cited).
Submit decree on notice construing the will in accordance with the foregoing.