48 N.J. 42 (1966)
222 A.2d 185
IN THE MATTER OF THE ESTATE OF CHARLES F. MORTON, DECEASED.
JOSEPH M. LEPIS, GUARDIAN AD LITEM FOR CARY EMIL BRAADT, ET AL., PLAINTIFF-APPELLANT,
v.
GLADYS M. BRAADT, ET AL., DEFENDANTS-RESPONDENTS.
The Supreme Court of New Jersey.
Argued March 23, 1966.
Decided August 4, 1966.
*43 Mr. Solomon Lubow argued the cause for plaintiff-appellant.
Mr. Louis Bort argued the cause for defendants-respondents Mildred Nelson Adams, Marion Louise Diehl, Robert Neal Nelson, and Neal Nelson as guardian of Edward Nelson, an incompetent.
Mr. Samuel Lanzet, guardian ad litem for Richard John Diehl, an infant, argued the cause pro se.
No appearance was made or brief filed on behalf of defendants-respondents Gladys M. Braadt, Shirley L. Young and Henry G. Hansen, Jr., or of defendants-respondents John A. Lyon, surviving trustee under the last will and testament of Charles F. Morton, deceased, and Alice Antille McVeigh and Charles S. McVeigh, Jr., executors of the last will and testament of Charles S. McVeigh, a deceased trustee under the last will and testament of Charles F. Morton, deceased.
The opinion of the court was delivered by HALL, J.
This will construction case concerns the devolution of the remainder interest in the residuary trust under the testamentary estate of Charles F. Morton. The action was instituted by the trustees, after the death of the life beneficiary, to obtain the instructions of the court.
The problem is the usual one of the testator's intention. Beyond the will itself, obviously prepared by a lawyer, we have no extrinsic evidence to aid us except some family history. Mr. Morton executed his will in 1946. He was then in his early seventies, as was his wife, Mary. They had had two *44 children, Eleanor Morton Hansen and Adeline Morton Nelson. Eleanor had died in 1943, leaving three children, Gladys M. Braadt, Shirley L. Young and Henry G. Hansen, Jr., all of whom were born prior to their grandfather's making of his will. Adeline was living then, but died some years before her father. She left four children, Mildred Nelson Adams. Marion Louise Diehl, Robert Neal Nelson and Edward Nelson. Mr. Morton passed away in 1954, without having made any change in his will. His widow, the income beneficiary, survived until 1961. At the time of her death, Eleanor's three children and Adeline's four were all living, as they are today.
The single question in the case is whether the trust remainder is to be divided into seven equal shares, one for each of the testator's grandchildren, or into two equal parts, representing the deceased daughters, with their respective children sharing each per stirpes.[1] The trial court decided in favor of the seven part division, the position asserted by Adeline's line. This appeal on behalf of Eleanor's branch (in which the trustees take no part) was certified on our own motion while pending unheard in the Appellate Division. R.R. 1:10-1(a).
The provision of the will particularly involved specifies:
"* * * upon [my wife's] death I direct my Trustees to divide my residuary estate into equal shares for my issue who shall survive my said wife, such division to be made in equal shares per stirpes, however, and not per capita * * *" (emphasis added throughout).
The disposition of each share "so set apart for a descendant of mine" was made dependent on whether the beneficiary thereof was or was not "in being at the date of [the testator's] death." If the person entitled was not in being then, *45 his share was to be paid over absolutely upon the life tenant's death. If "such descendant" was in being when Mr. Morton died  the case here as to all of the seven grandchildren , the share was to be continued in trust, with income to "such descendant" for life and, upon the descendant's death, the principal was to be given absolutely "to such descendant's issue who shall survive such descendant * * * in equal shares per stirpes, however, and not per capita * * *" Additional contingent provisions with respect to the principal of each share specified that "if there shall be no issue of such descendant who shall survive him or her then to the issue of the child of mine who was such descendant's ancestor who shall survive such descendant * * * in equal shares per stirpes, however, and not per capita * * * and if there shall be no issue of the child of mine who was such descendant's ancestor who shall survive such descendant, then to my issue who shall survive such descendant * * * in equal shares per stirpes, however, and not per capita."
Two other provisions may be noted. In the event Mrs. Morton were to predecease the testator, he specified that the residuary estate was to be divided "into equal shares for my issue who shall survive me, * * * in equal shares per stirpes, however, and not per capita," to be held in trust in the same manner as previously provided upon his wife's death if she survived him. And at the end of the section of the will disposing of the residuary estate, he said: "Anything hereinabove contained to the contrary notwithstanding, I give and bequeath to my daughter [Adeline] the sum of * * * $5,000 out of the principal of the share of my residuary estate so set apart for her * * *"
At Mrs. Morton's death, the testator's then "issue" and "descendants" were the seven grandchildren, all of whom were in being at the time of his death. This circumstance brought into operation the provision retaining the shares in trust with, as we mentioned, ultimate distribution of the principal thereof to the grandchildrens' issue. This made *46 such issue  the testator's great-grandchildren, born and unborn  necessary parties to the suit, even though their interest, as far as the present question is concerned, is identical with that of their parents. When the case was decided below, there were nine great-grandchildren in Eleanor's line, all infants, who were represented by a guardian ad litem appointed on the court's own motion. R.R. 4:30-2(b)(3). This guardian is the appellant. Their parents, Eleanor's three children, have not participated in the case at the trial level or here. There is at present only one great-grandchild in Adeline's branch, represented by a different guardian ad litem similarly appointed, who also appears for unborn issue of this class. Adeline's four children, one of whom is, of course, the parent of the infant just referred to, were represented below by counsel of their own choosing. They, along with this infant by his guardian, are the respondents here.[2]
The construction problem here arises because there is no precise provision in the will respecting a certain aspect of the devolution of the trust remainder in the event, as occurred, that Adeline should predecease her mother. The problem is a narrow one, since it relates not to a testamentary gap as to who shall take, but rather a lack of clarity as to the shares the testator's grandchildren  his "issue" surviving his widow as things turned out  were to receive. The basic will provision quoted earlier is certainly broad enough to encompass the situation which ensued. The question is what he intended it to mean. We are, therefore, not as concerned with the testator's "probable intent" as we would be if the will contained no provision whatever dealing with the contingency which *47 occurred. See Fidelity Union Trust Co. v. Robert, 36 N.J. 561 (1962); In re Cook, 44 N.J. 1 (1965); 5 New Jersey Practice (Clapp, Wills and Administration) § 196 (3d ed. 1962).
It is, of course, elementary that a testator's intention at the time he signed the instrument is controlling. "A will speaks the testamentary intention as of the time of its execution." 5 Clapp, op cit., supra at p. 287. Since we are dealing with a particular will in a particular factual complex, neither precedents involving the construction of other wills nor ritualistic canons of construction have great force in determining that intention. Fidelity Union Trust Co. v. Robert, supra (36 N.J., at p. 568). The inquiry is always peculiar to the individual circumstances. Its resolution in this case, it seems to us, turns on the pattern of the will itself in the light of the family situation.
As has been said, when Mr. Morton executed the testament in 1946, he was elderly and his wife was of approximately the same age. He had one daughter living and one deceased, who had left three children. His normal expectation would be that his living daughter would survive her mother. She had several children at the time and the testator would realize she could have more, while the deceased daughter's branch was closed.
The will seems to us to have been primarily, but not exclusively, drawn on the assumption of the living daughter's survival. It is admittedly clear that, had Adeline survived her mother, the direction for distribution of the remainder, either upon Mrs. Morton's death or in the event she predeceased her husband, intended and required a division into two equal parts, one for Adeline and the other for further equal division among Eleanor's three children. They were the testator's "issue" surviving his wife, since he used "issue" in the sense of his own "issue" on the two planes existing at the time of execution. The further language ordering division into stirpital, and not capital, shares assured the representational *48 distribution.[3] The basic intent is clear that the remainder be divided equally between the two branches of the testator's family.
Of significance, we think, in further evidencing this fundamental intent are the additional provisions, previously adverted to, requiring that branch devolution be maintained throughout the life of the trusts, which are directed to be continued if the first beneficiary after Mrs. Morton's death was in being when the testator died. Careful terminology is used to make it positive that there shall be no shifting of benefit from one branch to the other unless and until a complete failure of issue occurs in one branch.
The broad terminology used in the initial direction to divide the residuary estate upon the wife's death "into equal shares for my issue who shall survive my said wife", especially when considered with the further provisions just referred to, make it clear to us that the same two-share, branch, representational division was intended, whether Adeline survived her mother or not. One could think that a testator might naturally feel differently, as far as equal treatment of grandchildren was concerned, if all his children were dead when he prepared his will and the number and identity of his closest descendants thereby fixed forever. But here, our view that Mr. Morton wished to continue the equal treatment of the two family branches after Adeline's death, which he had plainly specified to be his intention during her lifetime, finds further support in the fact that he, obviously a man of substance, did not change his will in the four years that elapsed between her demise and his. We are convinced *49 the position of the appellants is the sound one and that the trial court erred in deciding otherwise.
The contrary argument of the respondents urging a seven-share division rests on the proposition that though the words used expressed one intent while Adeline remained alive  concededly the one we have spelled out , the same words assumed a different meaning, and consequently a shifted intent on the part of the testator, once Adeline passed on during his lifetime. The construction advanced is that "issue who shall survive my wife," after Adeline's death, meant and called for division of the trust remainder into equal shares on the basis of each plane of descendants then in existence. All the seven grandchildren, as the first level of descendants, were then placed on the same plane, therefore calling, it is claimed, for equal distribution among them. We can find no language in the will to support such a view and respondents are unable to point to any judicial authority approving such a shifting construction. It certainly seems unnatural to us for a testator to say to certain of his grandchildren (Adeline's children), that you will take more from my estate if your mother dies before your grandmother than you would receive through your mother if she had lived.
The judgment of the Probate Division is reversed and the matter remanded for further action in accordance with this opinion.
For reversal and remandment  Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO  6.
For affirmance  None.
NOTES
[1] We are advised that the trust corpus amounts to about $270,000. If it is divided seven ways, each gross share would approximate $38,570. If split in two parts and then per stirpes, the gross share of Eleanor's children would be about $45,000 each and Adeline's about $33,750. each.
[2] We should point out that, since the interest of Adeline's children and their issue is presently identical, separate briefs and argument in the trial court and here appear to be a needless duplication of effort and expense. We should further comment that while the guardian ad litem for the infants in Eleanor's line is a lawyer, who appeared pro se below, we find him represented on the appeal by another attorney, a practice likewise leading to unnecessary depletion of the estate assets and not to be condoned.
[3] At the time the will was drawn the law in New Jersey followed the English rule that, in the absence of contrary language, a gift to "issue" generally included progeny to the remotest degree, all taking per capita. Stickel v. Douglass, 7 N.J. 274 (1951). The stirpital provision here precluded the operation of that rule. Our law was changed by N.J.S. 3A:3A-1 and 2, which was enacted in 1952, but, on its face at least, made applicable to the will of any person dying after the immediate effective date of the statute. In view of the language used in this will, we think the statute has no bearing.