909 P.2d 561

In the Matter of the TRUST ESTATE
OF Samuel Castle DWIGHT,
Deceased.

**FIRST HAWAIIAN BANK,**
Petitioner–Appellee,

v.

Christie E. KEOLANUI, Harriet Oana,
Beverly P. Kinimaka, Elizabeth K.
Wade, Christian P. Ellis, Jr., and Dwight
M. Ellis, Respondents–Appellants.

No. 17950.

Supreme Court of Hawai'i.

Dec. 14, 1995.

As Amended Dec. 27, 1995.

Scott A. Makuakane of Beck & Taylor, on the briefs, Honolulu, for respondents-appellants.

James H. Wright (Randall M.L. Yee and Lori M. Ohinata with him on the briefs), Honolulu, for Frances R. Spencer, Helen A. Ramirez and Samuel J. Dwight, respondents-appellees.

Anthony B. Craven of Rush Moore Craven Sutto Morry & Beh, Honolulu, attorney of record for petitioner-appellee, no brief filed.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

RAMIL, Justice.

In this appeal, we are called upon to interpret a provision in the last will and testament of Samuel Castle Dwight, deceased (Settlor). The provision in question concerns the distribution of the trust corpus upon its termination.

Specifically, Respondents–Appellants Christine E. Keolanui, Harriet Oana, Beverly P. Kinimaka, Elizabeth K. Wade, Christian P. Ellis, Jr., and Dwight M. Ellis (collectively Appellants) appeal the portion of the Order re Petition for Instructions, issued on February 3, 1994, that relates to the distribution of the trust corpus among the Settlor's great-grandchildren. The circuit court ruled that the phrase "to such of the issue of my said adopted children [Samuel and Harriette] as shall then be living in equal shares per stirpes" meant that one-half of the trust estate was to be divided among Samuel's three children (*i.e.*, each child was to receive one-sixth of the remaining trust assets) and that the other half was to be divided among Harriette's six children (*i.e.*, each child was to receive one-twelfth of the remaining trust assets). We agree. The Settlor's expressed intent, presumptions arising under Hawai'i common law, treatises, and a grammatical analysis of the trust language compel the affirmance of the circuit court's decision.

## I. *BACKGROUND*

On April 8, 1926, Samuel Castle Dwight, the Settlor, executed his last will and testament. In the will, he created an inter vivos trust that provided, *inter alia*, that, after his death, the income was to be paid in three equal shares to his daughter Elsie, and Samuel and Harriette, his two grandchildren whom he had adopted as his own children. Upon the death of one of the three, the income would be divided in equal shares between the two survivors; upon the death of the second, that person's share would be distributed to his or her issue. Thus, when Elsie died on January 18, 1944, the income from the trust was divided equally between Samuel and Harriette.

Harriette, the last survivor of the three, died on April 26, 1993, thus terminating the trust. The will stated that, upon termination of the trust, the remaining trust assets were to be distributed "to such of the issue of my said adopted children as shall then be living in equal shares per stirpes."

At the time the trust terminated, the surviving issue were Samuel's three children (Samuel, Helen, and Frances), and Harriette's six children (appellants Christie, Harriet, Beverly, Elizabeth, Christian, and Dwight).

First Hawaiian Bank (Petitioner), trustee of the trust, was uncertain as to how to distribute the remaining trust assets. Depending on the interpretation of the phrase, "to such of the issue of my said adopted children as shall then be living in equal shares per stirpes," the assets were either to be divided equally among all remainderpersons or to be split in halves—one half to be divided among Samuel's issue and the other half to be divided among Harriette's issue. Accordingly, Petitioner filed a petition for instructions on July 29, 1993, in the first circuit court.

The circuit court held that the trust assets were to be divided in halves—one half to Samuel's issue and one half to Harriette's issue.

Harriette's children thereafter appealed.

## II. *STANDARD OF REVIEW*

■ "The construction of a testamentary trust based solely on the will itself is a conclusion of law which we review under the right/wrong standard." *Trust Created Under Will of Damon*, 76 Hawai'i 120, 123–24, 869 P.2d 1339, 1342–43 (1994).

## III. *DISCUSSION*

### A.

■ Hawai'i law requires that the Settlor's intent be determined, if possible, by examin-

ing the will as a whole, and effectuated if not contrary to the law or public policy. *Id.* at 124, 869 P.2d at 1343; *In re Lopez*, 64 Haw. 44, 49, 636 P.2d 731, 735 (1981).

Appellants argue that the Settlor's intent regarding whether the term "per stirpes" was to be applied using his adopted children, on the one hand, or the issue of his adopted children, on the other, as the stirpital roots were not clearly expressed in the will and that, without the benefit of a careful review of relevant authorities, reasonable people could differ regarding the correct interpretation of the will. We disagree.

■ .First, we find no ambiguity in the language used by the Settlor to express his intent. It is clear that the Settlor intended distribution of the remaining corpus on a per stirpes basis. The Settlor has evinced this intent by stating that, upon termination of the trust, the remaining trust assets were to be distributed "to such of the issue of my said adopted children as shall then be living in equal shares *per stirpes*" (emphasis added).

■ Second, it is well-established that "per stirpes" means "by or according to root," "according to or by stock," or "by right of representation," *i.e.*, that the descendants are to take through or as representatives of a parent. Restatement (Second) Property, (Donative Transfers) §§ 25.9 and 28.2 (1988). Implicit in the phrase is the concept that the "root" or "stock" begins with the ancestors of those who are to take and *not* with the takers themselves. *Id.; see also Weller v. Sokol*, 271 Md. 420, 318 A.2d 193 (1974) (stating that "per stirpes" means taking the share of one's ancestor).

The trust language persuades this court to affirm the circuit court's conclusion.

### B.

Appellants argue that if a trust instrument does not evince any unequal treatment of the beneficiaries, all being of the same degree of relationship to the settlor, the presumption

will be that their interests will be divided in equal shares. *Lopez*, 64 Haw. at 55–56, 636 P.2d at 731. By contrast, Appellees contend that even if a fair reading of the will raises a legitimate question as to the distribution of the corpus, another basis of distribution, such as a "per capita" distribution, is not justified. *See In re Trust Estate of Kanoa*, 47 Haw. 610, 624, 393 P.2d 753, 761 (1964).

In *Lopez*, the trust instrument provided that "two thirds of the corpus shall be held in trust *'for all of the children* of the [Named Eight] who shall be living at the time of the death of the last survivor of the [Named Eight] in equal shares if more than one.' (Emphasis added.)" *Id.* at 55, 636 P.2d at 738. This Court rejected the argument that the trust corpus should be distributed per stirpes because the trust document was devoid of any language espousing such an intent. Based on the lack of any reference to a stirpital distribution and use of the word "children," the court held that the children should be treated equally. *Id.* at 59, 636 P.2d at 741.

The *Lopez* court relied, in part, on Section 300 of the Restatement (Second) of Property, which sets forth those elements characteristic of a per capita distribution, *absent language to the contrary. Id.* at 55, 636 P.2d at 739 (emphasis added). *Powell on Real Property* was in accord with the Restatement and set forth three factors to support its position.[1] *See* 3 *Powell on Real Property* [hereinafter, *Powell*], ¶ 368 (1995). Appellees argue that these factors are irrelevant in the present case because the word "children" is not used in the Trust. We agree.

In the case at hand, the operative section in the Restatement (Second) of Property (Donative Transfers) is not section 300, but rather is section 25.9, which discusses the effect of the word "issue:"

When the donor of property describes the beneficiaries thereof as *"issue" or "descendants" of a designated person,* the primary meaning of such class gift term is deter-

---

1. *Powell* emphasizes three key elements: (1) a class gift has been created in favor of the children of the named beneficiaries; (2) the members of the class stand in identical relation to the Settlor; and (3) the instructions are such that distribution shall be in "equal shares if more than one."

mined by substituting in place of the class gift term the words "children" and "children of children" and "children of children of children," etc. of the designated person, and applying the rules of §§ 25.1–25.7 to ascertain *who is initially included and excluded.* It is assumed, in the absence of language or circumstances indicating a contrary intent, that the donor adopts such primary meaning.

Comment "a" then notes that, unlike the use of the word "children," where a donor describes beneficiaries as "issue," that term refers to a "succession of generations down from the designated person." *Id.* Thus, a person is either included or excluded from receiving a gift by applying the expanded meaning of the term "children" to each successive generation *below* the designated person, *e.g.,* "children of children," or "children of children's children."

■ In summary, under a "pure" per stirpes model, the Restatement requires the initial division to be in the first generation, whether or not there is a survivor, and then permits the living descendants in the next generation to succeed to that share. Restatement, *supra,* § 28.2. This process maintains equal division *among family lines. Id.*

Moreover, in 2A *Powell,* the authors state that "the use of [the word] 'issue' ... demonstrates that the donor intended a succession of generations from a certain person...." 2A *Powell,* § 30.08 at 30–107.

Appellees cite *Kanoa, supra,* as authoritative on the issue of equal distribution among families rather than the takers themselves. In *Kanoa,* the settlor left the income of her estate to five individuals ("Named 5"), with the proviso that should one die, his or her 'keiki'[2] or issue would take the parent's share of their income:

I direct my Trustee to equally divide all of the income from my estate [among the Named 5] ..., but if any of them die leaving any 'keiki ponoi' surviving, then the

portion of the one who died shall be divided among the 'keiki' who are living. *Kanoa,* 47 Haw. at 614–15, 393 P.2d at 756.

This court held that the "general testamentary plan clearly bespeaks per stirpes, in line with the prior decision on the distribution of income," *id.* at 623, 393 P.2d at 760, and that failure to distribute the corpus in the same manner as the income "would defeat the harmonious and equal plan of distribution established by the testatrix." *Id.* at 624, 393 P.2d at 761. Moreover, the *Kanoa* court held that the combination of (i) a presumption of a stirpital distribution, (ii) the use of the word "equally," and (iii) the use of the term "heirs at law," when read in light of the designated method of income distribution, required the corpus to be divided equally among the four families (one of the Named 5 did not leave issue). *Id.* Lastly, the *Kanoa* court held that "the presence of a single ambiguous word [does not justify] a per capital distribution." *Id.* Thus, from the context of the whole will, it was clear that "[w]here there are two or more families ... words of equality ... apply to the several families and those class members who are the children of one life tenant take only the share of their parent." *Id.*

In *In re Dickinson's Estate,* 10 Misc.2d 274, 167 N.Y.S.2d 80 (N.Y.1957), the court reached a similar result. The same language was used as in the trust at issue in the present case—"in equal shares per stirpes." *Id.* at 81. The testator, Dickinson, left her estate to the children of her four siblings, *i.e.,* her nieces and nephews. *Id.* The court held that the stirpital "root" was the testator's siblings, not the nephews and nieces, and ordered the corpus to be distributed in four equal shares to the siblings' issue and then to the nephews and nieces. *Id.* at 82.

In *In re Morton's Estate,* 48 N.J. 42, 222 A.2d 185 (1966), the court reached a result similar to *Dickinson.* "The single question ... is whether the trust remainder is to be divided into seven equal shares, one for each of the testator's grandchildren, or into two equal parts, representing the deceased

**2.** The Hawaiian term "keiki" is defined as "child." Mary Kawena Pukui & Samuel H. El-

bert, Hawaiian Dictionary 142 (1986).

daughters, with their respective children sharing each per stirpes." *Id.* at 186. The will, drafted at a time when New Jersey adhered to the presumption that gifts "to issue" should be distributed per capita, directed that the corpus be divided "into equal shares for [the settlor's] issue who shall survive my said wife, such division to be made in equal shares per stirpes, however, and not per capita." One of the testator's daughters, who had three children, was already deceased when the will was executed. The other, who had four children, survived her father but predeceased her mother. In holding that the daughters, rather than the grandchildren, were nonetheless the "stock" of the stirpital roots, the court observed that "[i]t certainly seems unnatural to us for a testator to say to certain of his grandchildren ... that you will take more from my estate if your mother dies before your grandmother than you would receive through your mother if she had lived." *Id.* at 189.

*Weller v. Sokol,* 271 Md. 420, 318 A.2d 193 (1974), is also similar to the present case. In *Weller,* the trust corpus was to be divided "among the issue and descendants of ... [the settlor's] children ... per stirpes and not per capita[.]" *Id.* at 193. The court held that "the stirpes were to be found among the children of the testator who left descendants surviving at the time of the termination and not among the grandchildren, who were the first takers[.]" *Id.* at 200. "The appellants ... would have us frustrate this by finding the stocks among the first takers rather than among the children." *Id.* at 432, 318 A.2d at 200. "[H]ad [the settlor] intended that the corpus be disproportionately divided among family groups, by awarding an equal share to each grandchild, he naturally would have used words indicating that each grandchild would take in his own right and not by representation[.]" *Id.* at 200.

Not only was the method of distribution in *Dickinson, Morton,* and *Weller* consistent with the other language of their respective trusts, but it is well-established that descendants are to take through or as representatives of a parent. As we have indicated, the legal concept of "per stirpes" means "by or according to root," "according to or by

stock," or "by right of representation." Implicit in the phrase is the concept that the "root" or "stock" begins at the ancestors of those who are to take, *not* the takers themselves. Restatement (Second) Property, (Donative Transfers) §§ 25.9 and 28.2. The rationale for the initial division into shares on the basis of the number of class members in the first generation below the settlor is that division of the trust corpus should be kept equal among family lines.

In the present case, Settlor's trust provided that the corpus should be distributed among "the issue of my said adopted children ... in equal shares per stirpes." Therefore, the "designated persons" are the "adopted children"—*not* the issue of the adopted children.

### C.

Furthermore, in the present case, the trust, when read as a whole, compels that distribution along family lines be maintained.

First, the Settlor did not treat unequal generations, *i.e.,* children and grandchildren, differently; rather he focused on equal distributions among the three. In the income provision of the trust, the Settlor provided an equal share of income for his daughter and for his grandchildren. Thus:

> UPON TRUST to pay the net income thereof to my daughter [name] and my lawfully adopted children [names] who are also my grandchildren in three equal shares during joint lives....

> ... and on the death of any of them to pay the said net income thereof in equal shares to the [two] survivors during their joint lives....

At this point, the Settlor required that the income be distributed per stirpes until his daughter and both grandchildren died. If one of them should die leaving children, those children would take their parent's share of the income and divide the same equally:

> and on the death of any one of the two survivors to pay the whole of said net income to the last survivor during her life *provided, however* if either of my said adopted children shall die ... leaving a

child or children surviving her, then and in every such case ... child or children shall ... take the share of the said net annual income of my property which his, her or their mother would have taken if she had continued to live ...

(Emphasis added.) In short, the Settlor's intent was to leave the trust income equally to the two separate families.

Finally, and as in *Kanoa*, the Settlor intended distribution of the trust corpus to parallel income distribution. Again, the operative provision reads:

... on the death of the last survivor of my said daughter and my said adopted children my Trustees shall convey all of my property to such of the issue of my said adopted children as shall then be living in equal shares per stirpes.

Accordingly, review of the provision for distribution of corpus in light of the entire trust instrument makes it clear that the trust corpus was to be distributed as the circuit court concluded, *i.e.*, one-half to Samuel's issue and one-half to Harriette's issue.

### D.

Moreover, it is also sensible that "per stirpes" refers to "adopted children" from a linguistic perspective. Had the phrase "per stirpes" not been included, the distribution provision would have read "to the issue of my adopted children as shall then be living in equal shares," which would have indicated a per capita distribution. However, that is not how the trust read, and the per stirpes language cannot be ignored outright as Appellants wish. The fact that the Settlor included the phrase "per stirpes" in conjunction with both "adopted children" and "equal shares" confirms his intent to maintain the distribution method articulated in the income provisions.

First, the Settlor used the phrase "equal shares" three times in the trust. The first referenced equal shares in income among the Settlor's daughter and the two adopted children. The second use required that the adopted children share the income equally. There is no indication that the Settlor did not intend to reference his adopted children again when he used the phrase "equal

shares" for the third time. Had this not been the Settlor's intent, there would have been no reason to include the phrase "adopted children."

Second, use of the phrase "equally per stirpes" does not change the result. *In re Hickey's Estate*, 73 N.Y.S.2d 508, 516–17 (1939). In *Hickey*, the testator's will devised income to his son and daughter for life, and upon their deaths, "to the children of my said daughter, ..., and the children of my said son, ..., living at the time of the death of the survivor of my said children, to be divided between them equally, per stirpes[.]" *Id.* at 512. The court noted that placing the word "equally" before "stirpes" created no inconsistency in a per stirpital distribution because it "signifie[d] that equality of the one-half share [should] be maintained among the children of each group." *Id.* at 516. Thus, the court held that the testator's intent was to create an equal division of his estate among his daughter and son's families, consistent with the income distribution. *Id.*

In sum, grammatical analysis of the language used in the trust by the Settlor confirms that he intended to divide equally among his adopted children, not only the trust income, but also the trust corpus.

### IV. CONCLUSION

Given the Settlor's expressed intent, our examination of the will, presumptions arising under Hawaiʻi common law, treatises, and a grammatical analysis of the trust language, we hold that the circuit court properly effectuated the Settlor's intent in ordering the corpus of his trust to be divided into two equal parts between his two adopted children. Therefore, we affirm the judgment.