130 P.3d 1046

**In the Matter of the Ellen K. and William T. ROBINSON TRUST, Dated May 13, 1925.**

**No. 26786.**

Supreme Court of Hawai‘i.

March 29, 2006.

Darryl M. Taira and Barbara J. Wong (of The Pacific Law Group), on the briefs, for respondents-appellants Alan Michael Robinson, Mary E.F. Ciacci, Roselle R. Armitage, and Louis Robinson.

Rhonda L. Griswold, Honolulu, (of Cades Schutte), on the briefs, for petitioners-appellees First Hawaiian Bank and Gordon M. Robinson.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by MOON, C.J.

The instant case involves the interpretation of a corpus distribution provision in a trust created pursuant to a deed of trust. Respondents-appellants Alan Robinson, Mary E.F. Ciacci, Roselle R. Armitage, and Louis Robinson [hereinafter, collectively, Appellants] appeal from the Circuit Court of the First Circuit's August 2, 2004 judgment, entered by the Honorable Colleen K. Hirai pursuant to Hawai'i Probate Rules (HPR) Rule 34 (2003)[1] and Hawai'i Rules of Civil Procedure (HRCP) Rule 54 (2003).[2] Therein, the circuit court granted a petition for instructions filed by the trustees/petitioners-appellees First Hawaiian Bank and Gordon M. Robinson [hereinafter, collectively, Petitioners] and determined that, for purposes of distribution of the corpus upon the termination of the trust, the corpus is to be distributed equally among the settlors' grandchildren per capita, with the issue of any deceased grandchild taking his or her deceased parent's share per stirpes.

On appeal, Appellants contend that the circuit court erred in determining that the corpus is to be distributed among the grandchildren per capita. Appellants maintain that the corpus is to be distributed among the grandchildren per stirpes. Appellants do *not* contest the circuit court's ruling that the corpus is to be distributed to the issue of any deceased grandchild taking his or her deceased parent's share per stirpes.

1. HPR Rule 34 provides in relevant part:

    (a) **Entry of Judgment.** All formal testacy orders ... shall be reduced to judgment and the judgment shall be filed with the clerk of the court. Such judgments shall be final and immediately appealable as provided by statute. *Any other order that fully addresses all claims raised in a petition to which it relates, but that does not finally end the proceeding, may be certified for appeal in the manner provided by Rule 54(b) of the Hawai'i Rules of Civil Procedure.*
    (Bold emphasis in original.) (Underscored emphasis added.)

2. HRCP Rule 54 provides in pertinent part:

    (b) **Judgment upon multiple claims or involving multiple parties.** When more than one claim for relief is presented in an action ... or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any ... form of decision ... which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties[.]
    (Emphasis in original.)

For the reasons discussed more fully *infra,* we conclude that Appellants' contentions lack merit. Accordingly, we affirm the circuit court's August 2, 2004 judgment.

## I. BACKGROUND

### A. Factual Background

On May 13, 1925, William T. Robinson (Mr. Robinson) and Ellen K. Robinson (Mrs. Robinson) [hereinafter, collectively, the Robinsons], as husband and wife, executed a deed of trust, creating the instant trust. The trust was established for the benefit of the Robinsons and their ten children. The trust provides that, upon the death of the Robinsons, all of the net income is to be distributed to their children "and the issue of any deceased child of theirs born as aforesaid, such issue to take by right of representation." After the death of the Robinsons, the Robinsons' ten children each received a one-tenth share of the trust income. Currently, nine of the ten children are deceased, one having died without issue. Thus, the sole surviving child and the eight deceased children with surviving issue each have a one-ninth interest in the trust income. Accordingly, pursuant to the income distribution provision of the trust, each deceased child's one-ninth share of the trust income is being paid to that child's issue by right of representation. The income distribution provision has not faced any legal challenge.

Under the terms of the trust, the trust is to terminate five years after the death of the Robinsons' last surviving child, Ululani Collins (Ululani). In November 2004, Ululani was ninety-four years old and is presumably still alive. The corpus distribution provision of the trust states:

[U]pon its determination as aforesaid, the [trustee] or its successor in trust is hereby directed and is hereby invested with full power and authority to *divide and distribute the said trust estate between and among the grandchildren of the said par-*

ties of the first and second parts [Mrs. Robinson and Mr. Robinson] and the issue of any deceased grandchild of theirs, share and share alike, such issue to take by right of representation.[3]

(Emphasis added.)

### B. Procedural History

On May 3, 2004, Petitioners[4] filed a petition for instructions regarding the corpus distribution provision of the trust with the circuit court. Therein, Petitioners sought instructions from the circuit court as to the distribution of the corpus with respect to the (1) grandchildren and (2) issue of any deceased grandchildren. With respect to the grandchildren, Petitioners asked the circuit court to determine whether the corpus is to be distributed: (1) equally among the grandchildren per capita; or (2) to the Robinsons' issue per stirpes. With respect to the issue of any deceased grandchildren, Petitioners requested the circuit court to determine whether: (1) the corpus is to be distributed equally among the grandchildren *and* the issue of any deceased grandchildren per capita; or (2) the issue of any deceased grandchildren are limited to their deceased parent's share of the corpus, *i.e.*, the share of any deceased grandchild is distributed to the deceased grandchild's issue per stirpes.

On June 7, 2004, Appellants and respondents Christopher Martus, Tate Robinson, Adrienne Ferris, Leslie Laird, and Ululani [hereinafter, Appellants and respondents are collectively referred to as Beneficiaries] jointly filed a memorandum in response to the petition for instructions. Therein, Beneficiaries essentially maintained that the corpus is to be distributed per stirpes rather than per capita. Specifically, Beneficiaries contended that: (1) the corpus is to be distributed to the Robinsons' issue per stirpes; and (2) the issue of any deceased grandchildren are limited to their deceased parent's share of the corpus, *i.e.*, the share of any

---

**3.** The trust defines Mrs. Robinson as the "party of the first part" and Mr. Robinson as the "party of the second part."

**4.** As previously stated, Petitioners are First Hawaiian Bank and Gordon M. Robinson (Gordon). Gordon is a grandchild of the Robinsons and,

thus, is a beneficiary of the trust. The trust presently has three co-trustees: First Hawaiian Bank, Gordon, and Ciacci. Ciacci, a grandchild of the Robinsons, is one of the four individuals comprising Appellants.

deceased grandchild is distributed to the deceased grandchild's issue per stirpes. In addition, Beneficiaries claimed that extrinsic evidence supports a per stirpes distribution of the corpus.

A hearing on the petition for instructions was held on June 18, 2004 and was continued on June 25, 2004. At the June 25, 2004 hearing, the circuit court orally ruled that it would grant the petition for instructions and held that, when the trust terminates, the corpus is "to be divided equally among the grandchildren per capita and the distribution to the issue of any deceased grandchild is limited to their deceased parent's share." In so ruling, the circuit court noted "that the distribution of the income as [sic] per stirpes and that the same language could have been used for the distribution of the corpus but it was different."

On August 2, 2004, the circuit court entered its written order granting the petition for instructions. Therein, the circuit court ordered, *inter alia,* that:

> Because the trust wording differed between the distribution of the income and the distribution of the corpus, upon termination of the [t]rust, the [t]rustee shall distribute the [t]rust estate equally among the grandchildren *per capita,* with the issue of any predeceased grandchild taking his or her deceased parent's share, per stirpes.

(Emphases in original.) Accordingly, the corpus is to be divided into twenty-four equal shares, representing the twenty-one living grandchildren and three deceased grandchildren with surviving issue, with the issue of the three deceased grandchildren taking his or her deceased parent's share per stirpes.

On August 2, 2004, the circuit court entered a judgment on the order granting the petition for instructions pursuant to HRCP Rule 54(b) and HPR Rule 34. On the same day, Petitioners and Beneficiaries filed a

"Stipulation to Certification of Order Granting Petition for Instructions, for Appeal." Appellants timely appealed on August 31, 2004.[5]

## II. *STANDARD OF REVIEW*

■■■ "The construction of a trust is a question of law which this court reviews *de novo." In re Medeiros Testamentary Trust and Life Ins. Trust,* 105 Hawai'i 284, 288, 96 P.3d 1098, 1102 (2004) (citation omitted).

> When construing a trust, this court is guided by principles relating to the interpretation of trusts as well as those relating to the interpretation of wills. A fundamental rule when construing trusts is that the intention of the settlor as expressed in a trust instrument shall prevail unless inconsistent with some positive rule of law. Additionally, in construing a trust document to determine the settlor's intent, the instrument must be read as a whole, not in fragments.

*In re Lock Revocable Living Trust,* 109 Hawai'i 146, 151–52, 123 P.3d 1241, 1246–47 (2005) (internal quotation marks and citations omitted).

## III. *DISCUSSION*

■■■ Appellants' sole contention on appeal centers on the interpretation of the corpus distribution provision in the trust with respect to the grandchildren's share of the corpus. As previously mentioned, the corpus distribution provision states:

> [T]he [trustee] or its successor in trust is hereby directed and is hereby invested with full power and authority to divide and distribute the said trust estate between and among the grandchildren of the said parties of the first and second parts [Mrs. Robinson and Mr. Robinson] and the issue of any deceased grandchild of theirs, share

---

5. The August 31, 2004 notice of appeal did not include Louis Robinson (Louis) as an appellant, and, thus, the notice of appeal was amended on September 24, 2004 to include Louis as an appellant. The September 24, 2004 amended notice of appeal relates back to the August 31, 2004 notice of appeal and is considered to be filed on August 31, 2004 for purposes of Hawai'i Rules of

Appellate Procedure (HRAP) Rule 4(a)(1) (relating to the time of filing a notice of appeal in civil cases). *See Enos v. Pac. Transfer & Warehouse, Inc.,* 80 Hawai'i 345, 355–56, 910 P.2d 116, 126–27 (1996) (stating that "an amended notice of appeal relates back to the notice of appeal it purports to amend") (citation omitted).

and share alike, such issue to take by right of representation[.]

## A. Interpretation of the Corpus Distribution Provision

Appellants maintain that the circuit court erred in determining that the corpus is to be distributed among the grandchildren per capita. Appellants contend that the phrases "share and share alike" and "by right of representation" in the corpus distribution provision apply only to the issue of any deceased grandchildren and not to the grandchildren themselves. Appellants then argue that, inasmuch as the foregoing phrases apply only to the issue of any deceased grandchildren, the remaining phrase "divide and distribute" calls for the grandchildren to take their share of the corpus by right of representation or per stirpes.

Other jurisdictions have construed corpus distribution provisions similar to the one in the instant trust. In *Condee v. Trout*, 379 Ill. 89, 39 N.E.2d 350 (1942), the Illinois Supreme Court (the court) was faced with construing the following corpus distribution provision in a will:

At the end of fifteen (15) years after my death I direct that my executors and trustees shall *distribute all of my property in equal parts to my children and grandchildren then living. In case of the death of any one of my children leaving heirs of their body or blood, such child or children shall take the part or parts from my estate that would [ha]ve gone to their mother if living.*

*Id.* at 351 (emphases added). The appellants contended that the foregoing provision clearly mandates a per capita distribution. *Id.* The appellees, on the other hand, argued that the foregoing provision dictates that the testator "did not intend that his grandchildren ... take in competition with their living mothers and plainly indicates an intent for a stirpital distribution." *Id.* The court noted that, standing alone, the phrase "in equal parts to my children and grandchildren then living" indicates "that a *per capita distribution* was intended." *Id.* at 352 (emphasis added). The court then stated that the latter

phrase "[i]n case of the death of any one of my children leaving heirs of their body or blood, such child or children shall take the part or parts from my estate that would have gone to their mother if living" was an "expressed intention that a child or children of a deceased child of the testator shall take per stirpes the share that would have gone to the mother if living at the time of distribution." *Id.* The court went on to note that, "[i]f a per capita distribution was intended[,] there clearly could be no necessity for the provision for per stirpes distribution to the grandchildren whose mother had deceased, nor would such have been a fair and even distribution to them." *Id.* Consequently, the court held that the corpus was to be divided *equally* among the children, with the share of any deceased child going to his or her issue per stirpes. *Id.* at 353.

In *In re Craighead's Estate*, 2 Pa. D. & C.2d 301 (Pa.Orph.1955), the Orphans' Court of Pennsylvania (the court) was faced with two corpus distribution provisions in a will. *Id.* at 302. The first provision, which was before the court for interpretation, stated:

Immediately upon the death of my said daughter, Bertha, I direct my trustees to pay over the balance of principal of said trust fund, together with any accrued and undistributed income thereon, *to such of my children as may then be living and the issue of such as may be dead, equally share and share alike.*

*Id.* (emphasis added). At the time of Bertha's death, the testator had no living children but had living grandchildren, great-grandchildren, and great-great-grandchildren. *Id.* Another provision of the will, which was not before the court for interpretation, stated:

In the event there shall be no issue then living of Horace M. Craighead, Jr.,[6] I direct my trustees to convey and divide the said trust principal *among my then living children and the issue of any deceased child, such issue to take the share their parent would have taken if living.*

*Id.* (emphasis added). The court stated that [t]he use of the phrase, "equally share and share alike," in lieu of the phrase, "such

---

**6.** Horace M. Craighead, Jr. appears to be the testator's son.

issue to take the share their parent would have taken if living," shows that [the testator] intended that in the case of the trust for his daughter [*i.e.*, the first provision] on distribution there should be an equal division of the estate per capita between the children and issue of deceased children. *Id.* at 303 (internal quotation marks omitted). The court also observed that the testator "knew how to direct a per stirpes distribution when [he] so intended[,]" *id.* (internal quotation marks omitted), inasmuch as the second provision included words of stirpital distribution. Finally, the court noted that, "in the absence of other language disclosing an intention to distribute stirpitally, the words 'equally to be divided,' 'divided into equal parts,' and the like, ordinarily favor distribution per capita rather than per stirpes." *Id.* at 303–04 (internal quotation marks omitted and citations omitted). Consequently, the court held that the first provision mandates an equal division of the corpus per capita between the children and the issue of deceased children. *Id.* at 304.

In this case, contrary to Appellants' position, the phrase "share and share alike" clearly applies to both the grandchildren and the issue of any deceased grandchildren, as in the trusts construed in *Condee* and *Craighead's Estate*. However, we agree with Appellants that the phrase "by right of representation" applies only to the issue of any deceased grandchildren and not to the grandchildren themselves. As such, consistent with *Condee* and *Craighead's Estate*, we believe that the phrase "between and among the grandchildren of [the Robinsons] and the issue of any deceased grandchild of theirs, share and share alike," standing alone, indicates that a *per capita* distribution was intended for the grandchildren *and* the issue of any deceased grandchildren. "Words such as 'in equal shares,' 'divided equally,' and '*share and share alike*' usually import equal treatment, or a division per capita." *In re Lopez*, 64 Haw. 44, 57, 636 P.2d 731, 739 (1981) (citations omitted) (emphasis added). However, the following phrase "such issue to take by right of representation" clearly directs that the *issue of any deceased grandchild*, not the grandchildren themselves, takes his or her deceased parent's share *per stirpes*. Essentially, this latter phrase denotes that the Robinsons did not intend the issue of any deceased grandchildren of theirs to take in competition with their living grandchildren. Because there is an absence of language disclosing an intention to distribute the corpus stirpitally to the grandparents, a reasonable construction of the trust dictates that the Robinsons' grandchildren are to take per capita, that is, each surviving grandchild and each predeceased grandchild who left surviving issue takes an equal share of the corpus upon the termination of the trust.

### B. *Comparison of the Income and Corpus Distribution Provisions*

■ Appellants next argue that, "even though the wording [of the trust] differs between the distribution of the income and corpus, both instructions lead to a per stirpes distribution." Appellants rely solely on *In re Trust Estate of Dwight*, 80 Hawai'i 233, 909 P.2d 561 (1995), in support of their argument that "different wording does not necessarily mean a differing distribution."

Although Petitioners emphasize that "their position is neutral in this matter[,]" they point out that the Robinsons "clearly knew how to effect a per stirpes distribution with respect to the income interest, yet used different language with respect to the distribution of the trust corpus." Petitioners note that, unlike the income distribution provision, the corpus distribution provision includes the phrase "share and share alike[,]" which has the same meaning as "in equal shares." Petitioners further state that, if the corpus distribution provision was "construed in the same manner as the income distribution provision (which does not include the 'share and share alike' clause), then the reference to 'share and share alike' would be meaningless." Petitioners conclude by stating that:

It is far more likely that the [Robinsons] intended the ["share and share alike"] clause to have meaning and that its purpose was to make it clear that the grandchildren were to receive an equal share of the trust estate, not just a per stirpes distribution of their parent's share. Had

the [Robinsons] intended a per stirpes distribution or [a] by representation distribution, they could have simply said that the trust estate was to be distributed to their issue by right of representation or to their children's issue by right of representation. Instead, they identified grandchildren as the applicable generation to "share and share alike."

In *Dwight*, the testator, Samuel Castle Dwight, executed his last will and testament in 1926. *Id.* at 234, 909 P.2d at 562. In his will, Dwight created an inter vivos trust that provided, *inter alia*, that, after his death, income from the trust was to be divided in three equal shares among his daughter (Elsie) and his two grandchildren (Samuel and Harriette), whom Dwight had adopted as his own children. *Id.* Specifically, the income distribution provision of the trust stated in relevant part:

> UPON TRUST to pay the net income thereof to my daughter [name] and my lawfully adopted children [names] who are also my grandchildren in three equal shares during joint lives....
>
> ... and on the death of any of them to pay the said net income thereof in equal shares to the [two] survivors during their joint lives....

*Id.* at 237, 909 P.2d at 565 (ellipses points in original). The income distribution provision went on to state that:

> [A]nd on the death of any one of the two survivors to pay the whole of said net income to the last survivor during her life *provided, however* if either of my said adopted children shall die ... leaving a child or children surviving her, then and in every such case ... child or children shall ... *take the share of the said net annual income of my property which his, her or their mother would have taken if she had continued to live.*

*Id.* at 237–38, 909 P.2d at 565–66 (some emphases in original and some added) (ellipses points in original). This court noted that Dwight's "intent was to leave the trust in-

come equally to the two separate families[, *i.e.*, Samuel and Harriette's respective families]." *Id.* at 238, 909 P.2d at 566. The corpus distribution provision, which was at the center of dispute in *Dwight*, stated:

> ... on the death of the last survivor of my said daughter and my said adopted children my Trustees shall convey all of my property *to such of the issue of my said adopted children as shall then be living in equal shares per stirpes.*

*Id.* (emphasis added) (ellipses points in original). This court determined, *inter alia*, that Dwight intended distribution of the trust corpus to parallel income distribution and, therefore, held that the corpus distribution provision mandated distribution of the corpus to one-half to Samuel's issue and one-half to Harriette's issue. *Id.*

Although the court in *Dwight* did not specifically articulate how the corpus distribution provision was parallel to the income distribution provision, a comparison of the two provisions shows that Dwight employed similar, *rather than differing*, language in the two provisions to clearly indicate that he intended a per stirpes distribution of the corpus as well. This court has previously noted that a similar phrase, " 'such last mentioned child, or children, shall ... take the share of the ... income which his, her or their parent would have taken[,]' clearly effect[ed] a per stirpital distribution. In other words, a child or children would take by representation [7] through their parent." *Lopez*, 64 Haw. at 54 n. 7, 636 P.2d at 738 n. 7 (some ellipses in original and some added). As such, the income distribution provision in *Dwight*, which was nearly identical to the income distribution provision in *Lopez*, clearly effected a per stirpes distribution, specifically, income to the children of Dwight's adopted children per stirpes. Thus, inasmuch as the corpus was clearly to be distributed to the issue of Dwight's adopted children per stirpes, income and corpus were to be distributed in the same manner.

---

7. This court has consistently held that "by representation" means "per stirpes." *See In re Estate of Damon*, 109 Hawai'i 502 at 516, 128 P.3d 815 at 829 (2006) (*Damon II*) (stating that "per stirpes means by right of representation"); *In re Lock*, 109 Hawai'i at 152, 123 P.3d at 1247 (same); *Dwight*, 80 Hawai'i at 235, 909 P.2d at 563 (same).

188

As previously stated, the income distribution provision in the instant trust states that, upon the death of the Robinsons, all of the net income is to be distributed to "the *children* of the said parties of the first and second parts [Mrs. Robinson and Mr. Robinson] born as aforesaid and the issue of any deceased child of theirs born as aforesaid, such issue to take by right of representation." (Emphasis added.) The foregoing language has been construed by the parties "as meaning that the children take an equal share of the income and, at a child's death, his or her share of the income goes to his or her descendants by right of representation." The corpus distribution provision, on the other hand, states that the corpus is to be distributed "between and among the *grandchildren* of the said parties of the first and second parts [Mrs. Robinson and Mr. Robinson] and the issue of any deceased grandchild of theirs, *share and share alike,* such issue to take by right of representation." (Emphases added.) Unlike the trust in *Dwight,* the instant trust, when read as a whole, does not indicate that the Robinsons intended distribution of the trust corpus to wholly parallel income distribution. Although the income distribution provision essentially states that income is to be distributed to the *issue*[8] *of the Robinsons' children* by right of representation or per stirpes, the corpus distribution provision states that only the *issue of any deceased grandchildren* of the Robinsons are to take by right of representation. Stated differently, while the income distribution provision implicitly states that the Robinsons' grandchildren are to take *income* per stirpes, the corpus distribution provision does *not* indicate that the Robin-

sons' grandchildren are to take *corpus* per stirpes. "If the [settlors] intended a per stirpital distribution of the corpus, [they] naturally would have used similar language as in the income provision. The fact that [the settlors] failed to do so is a significant indication of [their] intent for a per capita distribution of the corpus." *Lopez,* 64 Haw. at 59, 636 P.2d at 741. Here, the Robinsons clearly knew how to effect a per stirpes distribution with respect to their grandchildren as evidenced by the income distribution provision. Had the Robinsons intended their grandchildren to take corpus per stirpes, they would have used similar language as in the income distribution provision.

■ Moreover, unlike the income distribution provision, the corpus distribution provision includes the phrase "share and share alike." If the corpus distribution provision were to be construed in the same manner as the income distribution provision, then the reference to "share and share alike" would be rendered meaningless. However, "[i]t is to be presumed that every word is intended by the testator to have some meaning; and no clause is to be rejected to which a reasonable effect can be given[.]" *Bookwalter v. Lamar,* 323 F.2d 664, 668 (8th Cir.1963) (citation omitted); *see also Joyner v. Duncan,* 299 N.C. 565, 264 S.E.2d 76, 86 (1980) ("Effect must be given to each clause, phrase[,] and word, if a reasonable construction of the will so permits. Each string should give its sound." (Citation omitted.)); *In re Estate of Mank,* 298 Ill.App.3d 821, 232 Ill.Dec. 918, 699 N.E.2d 1103, 1107 (1998) (noting that "a will must be construed as a whole and every word, phrase[,] and clause given effect if possible") (citation omitted). Thus, contrary

8. In *Damon II,* this court reiterated the definition of "issue":

"When the donor of property describes the beneficiaries thereof as 'issue' or 'descendants' of a designated person, the primary meaning of such class gift term is determined by substituting in place of the class gift term the words 'children' and 'children of children' and 'children of children of children,' etc. of the designated person[.]" [*Dwight* ], 80 Hawai'i at 235–36[, 909 P.2d at 563–64] (quoting Restatement (Second) of Prop.: Donative Transfers § 25.9 (1988)); *see also* 3 Richard R. Powell, *Powell on Real Property* § 30.08 at 30–107 (2004) ("In a gift to the 'issue' or 'descendants' of a certain

person, these terms are understood by reference to the definition and constructional rules for the term 'children.' Thus, the terms 'children,' 'children of children,' and so forth are substituted for 'issue' and 'descendants.' "). Indeed, "[t]he term 'issue,' shorn of any and all judicial constructions and taken in its ordinary and popular sense as used in respect to pedigree ..., is definitely a general term synonymous with children, progeny, offspring, descendants, etc." *O'Brien v. Walker,* 35 Haw. 104, 109 (1939).

109 Hawai'i at 514 n. 15, 128 P.3d at 828 n. 15 (quoting *Medeiros,* 105 Hawai'i at 290, 96 P.3d at 1104).

to Appellants' contention, "different wording" does mean a "differing distribution." Accordingly, we hold that the circuit court correctly concluded that, "[b]ecause the trust wording differed between the distribution of the income and the distribution of the corpus," corpus is to be distributed differently from income.[9]

## IV. CONCLUSION

Based on the foregoing, we affirm the circuit court's August 2, 2004 judgment.

---

9. Appellants also contend that, inasmuch as the corpus distribution provision is ambiguous, extrinsic evidence may be admitted to determine the Robinsons' intent. However, as discussed *supra,* the Robinsons' intent can be determined from the trust instrument itself, and that, therefore, the corpus distribution provision is not ambiguous. As such, we are precluded from considering extrinsic evidence of the Robinsons' intent. *Cf. In re Lock,* 109 Hawai'i at 153–54, 123 P.3d at 1248–49 (holding that, if there is an ambiguity "as to the meaning of the language" used in a trust, then "extrinsic evidence may be considered by the court to determine the true intent of the settlor") (internal quotation marks omitted).