**NOT FOR PUBLICATION IN WEST'S HAWAII REPORTS OR THE PACIFIC REPORTER**

<span style="color:red">**Electronically Filed
Intermediate Court of Appeals
CAAP-20-0000366
30-JUL-2024
07:10 AM
Dkt. 59 SO**</span>

NOS. CAAP-20-0000366 & CAAP-20-0000367

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


IN THE MATTER OF THE TADAMI TAD MIYAMOTO
TRUST AGREEMENT, DATED JULY 22, 1980, AS AMENDED

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(T. NO. 18-1-0011)


SUMMARY DISPOSITION ORDER
(By: Leonard, Acting C.J., and Wadsworth and Nakasone, JJ.)

This appeal arises out of a dispute concerning the Tadami Tad Miyamoto Trust Agreement, dated July 22, 1980, as later amended and restated (**Trust**), between Respondent-Appellant Theodore Miyamoto (**Ted** or **Trustee**) and his sister, Petitioner-Appellee Eileen Yabiku (**Eileen**).  Ted appeals from the following orders and judgments entered by the Circuit Court of the First Circuit (**Circuit Court**):

(1)  the August 31, 2018 "Order Granting in Part and Continuing in Part the Petition to Compel Trustee to (1) Distribute Trust Assets, and (2) Provide an Inventory and Accounting of the Trust, and (3) Pay From His Share or as a Surcharge Trust Income Taxes, Penalties and Interest Due and Owing (Filed 1/30/18)" (**Order 1**);

(2)  the May 8, 2020 "Judgment on Order Granting in Part and Continuing in Part the Petition to Compel Trustee to (1) Distribute Trust Assets, and (2) Provide an Inventory and Accounting of the Trust,

and (3) Pay From His Share or as a Surcharge Trust Income Taxes, Penalties and Interest Due and Owing, Filed August 31, 2018" (**Judgment 1**);

(3) the November 29, 2018 "Order Regarding Further Hearing on the Petition to Compel Trustee to (1) Distribute Trust Assets, and (2) Provide an Inventory and Accounting of the Trust, and (3) Pay From His Share or as a Surcharge Trust Income Taxes, Penalties and Interest Due and Owing (Filed 1/30/18)" (**Order 2**); and

(4) the May 8, 2020 "Judgment on Order Regarding Further Hearing on the Petition to Compel Trustee to (1) Distribute Trust Assets, and (2) Provide an Inventory and Accounting of the Trust, and (3) Pay From His Share or as a Surcharge Trust Income Taxes, Penalties and Interest Due and Owing, Filed November 29, 2018" (**Judgment 2**).[1]

On appeal, Ted contends that the Circuit Court erred in granting the Petition and entering Orders 1 and 2. For the reasons explained below, we affirm.

## I. Background

In 1980, Tadami Tad Miyamoto (**Tadami**) created the Trust as a revocable living trust. The Second Amendment to Trust Agreement, dated January 8, 1997, is the operative trust document and the subject of the parties' dispute. The Trust named Tadami and his wife, Hisako Shirley Miyamoto (**Hisako**), as Trustees.

Ted and Eileen are the only children of Tadami and Hisako. On July 8, 2003, Tadami was declared incompetent. Pursuant to the terms of the Trust, Hisako become the sole trustee at that time. Hisako executed her will (**Will** or **Hisako's Will**) on July 31, 2003. Hisako died on October 16, 2003. When Hisako died, Ted became the sole Successor Trustee of the Trust. Tadami died about seven years later, on September 3, 2010.

---

[1] The Honorable R. Mark Browning entered Order 1, Judgment 1, and Judgment 2. The Honorable Virginia L. Crandall entered Order 2.

Hisako's Will was submitted to probate in 2004. Hisako's Will exercises a power of appointment given to her in Subparagraph 4.B.(5) of the Trust, quoted infra. Specifically, Hisako's Will exercises a power of appointment as to property "held pursuant to the 'Residuary Trust' or 'Trust B' as defined in and created under the . . . Trust[.]" Hisako's Will directs the Trustee to distribute this property as specified in the Will.

On January 30, 2018, Eileen filed in the Circuit Court a "Petition to Compel Trustee to (1) Distribute Trust Assets, and (2) Provide an Inventory and Accounting of the Trust, and (3) Pay From His Share or as a Surcharge Trust Income Taxes, Penalties and Interest Due and Owing" (**Petition**).

On August 31, 2018, the Circuit Court entered Order 1, which granted in part and continued in part the Petition. Specifically, the court ordered Ted: (a) to file an inventory of the Trust's assets; (b) to file an accounting of the affairs of the Trust; (c) to distribute to Eileen the Trust's interest in three properties (**Properties**), pending resolution of allocating the outstanding federal and state taxes owed by the Trust; and (d) to pay from Ted's share of the Trust assets or as a surcharge, all amounts owing for federal and state tax penalties and interest incurred to date.

On November 29, 2018, the Circuit Court entered Order 2. Pursuant to Order 2, the court: (a) appointed a master (**Master**) to review who should be allocated responsibility to pay the income taxes owed from the rental income obtained from two of the three Properties, and any disputes raised by Eileen regarding the accounting and inventory filed by Ted; and (b) ordered Ted to "distribute to [Eileen] forthwith" the Trust's interest in the Properties.

On May 8, 2020, the Circuit Court entered: (1) an order granting a January 6, 2020 Petition to Enter Final Judgment on [Order 2] and to Expunge Notice of Pendency of Action and directing entry of a final judgment on Orders 1 and 2 pursuant to Hawaiʻi Probate Rules Rule 34(a) and Hawaiʻi Rules of Civil Procedure Rule 54(b); (2) Judgment 1; and (3) Judgment 2.

3

Ted filed separate appeals from Judgments 1 and 2, creating appellate case numbers CAAP-20-0000366 and CAAP-20-0000367, respectively.  On June 26, 2020, this court consolidated the appeals under CAAP-20-0000366.

## II.  Discussion

Ted contends that the Circuit Court erred:  (1) in determining that the power of appointment that was granted to Hisako in the Trust was validly exercised in Hisako's Will; (2) in determining that the power of appointment that was granted to Hisako in the Trust was broad enough to allow Hisako to alter the substantive distribution of Trust Properties; and (3) in ordering Ted to distribute the Trust Properties to Eileen.

Ted's first and third contentions rest on the same argument – that the power of appointment granted to Hisako in Subparagraph 4.B.(5) of the Trust (quoted infra) was not validly exercised in Hisako's 2003 Will, because that power could only be effectuated after Tadami's death in 2010.

The construction of a trust is a question of law that we review de novo.  In re Robinson Trust, 110 Hawaiʻi 181, 184, 130 P.3d 1046, 1049 (2006).

> When construing a trust, this court is guided by principles relating to the interpretation of trusts as well as those relating to the interpretation of wills.  A fundamental rule when construing trusts is that the intention of the settlor as expressed in a trust instrument shall prevail unless inconsistent with some positive rule of law.  Additionally, in construing a trust document to determine the settlor's intent, the instrument must be read as a whole, not in fragments.

Id. (quoting In re Lock Revocable Living Tr., 109 Hawaiʻi 146, 151–52, 123 P.3d 1241, 1246–47 (2005)).

Here, the Trust as a whole reflects Tadami's intent to provide for him and Hisako during their lifetimes, to provide for Hisako should he die before her, and to benefit their children upon his eventual death.  During Tadami's life, the Trust was set up to pay Tadami net income and principal of the trust estate, and to pay, at the trustees' discretion, "for the support, maintenance in health, comfort and welfare" of Tadami and Hisako.

4

Upon Tadami's death, Paragraph 4 of the Trust provides for the allocation of Trust properties to two (and potentially three) subtrusts, as follows:

> Upon the death of [Tadami], the Trustees shall divide, hold and invest any and all of the properties received by the Trustees, by inter vivos transfer or by devise or bequest, upon the following trusts: . . . .

These subtrusts are described in Subparagraphs A and B.

Subparagraph 4.A. provides that if Hisako survives Tadami, the trustees of the Trust will set aside a separate trust for her benefit, known as the "Marital Trust" or "Trust A" (**Trust A**).  Upon Hisako's death, the trustees were to transfer, free of trust, the remaining principal of Trust A to or for the benefit of persons or Hisako's estate, as she appointed by a will "made after [Tadami's] death[.]"  If this power of appointment was not "effectually exercised," Trust A was to become part of Trust B as described below.  Because Hisako died before Tadami, Subparagraph 4.A. was not triggered.

Subparagraph 4.B. provides that upon Tadami's death, the remainder of his Trust property (and any portion of Trust A that was disclaimed), or all of the Trust property, if Hisako dies before Tadami, is to become the "Family Share."  If any of the assets of the Family Share were attributable to disclaimer by the still living Hisako, such assets were to be maintained as a separate "Disclaimer Trust" for Hisako's life (which did not occur).  The balance of the Family Share was to be held as a separate trust estate referred to as the "Residuary Trust" or "Trust B" (**Trust B**).  Because Hisako died before Tadami, all Trust property went into Trust B when Tadami died in 2010.

The Trust further provides, in Subparagraphs 4.B.(2) and (3), that from the date of Tadami's death, the trustees shall pay to or for the benefit of Hisako (if she had still been living), the net income from the Disclaimer Trust, if any, and Trust B, and such additional portions of the principal of the Disclaimer Trust, if any, and Trust B as may be needed to support "her accustomed manner of living, education, . . . maintenance in health, medical, dental, hospital and nursing expenses and expenses of invalidism."

The Trust also gave Hisako two powers of appointment as to Trust B. First, Subparagraph 4.B.(4) provides that after Tadami's death and "during [Hisako's] life," the trustees are to distribute portions or all of the principal of Trust B "to and among [Tadami's] issue upon such conditions and estates, in such manner, as [Hisako] shall appoint by signed instruments delivered to the Trustees during the life of [Hisako]." This power was not exercised, as Hisako died before Tadami.

Subparagraph 4.B.(5) further provides:

> The Trustees shall upon the death of [Hisako], distribute such portions of the principal and unpaid income of [Trust B] (but not of the Disclaimer Trust), to and among [Tadami]'s issue upon such conditions and estates, and in such a manner as [Hisako] may appoint by her Last Will and Testament.

This is the power of appointment that Hisako exercised in her 2003 Will, as described above.

Ted contends that Hisako could not validly exercise this power of appointment in her Will, where Trust B was not "created" until Tadami's death in 2010, and the power of appointment could only be validly exercised by will if Hisako outlived Tadami. Ted argues that "if and where [Tadami] was still alive at the time of [Hisako's] death, **Trust B has not yet been created**, and thus there were no [Trust B] properties to distribute, and the . . . Trust remained revocable, such that the distribution of Trust property upon Hisako's death (seven years **before** Tadami died) simply would not make sense."

Ted's argument rests on a faulty premise – that Trust B was not "created" until Tadami's death. Trust B was created by Subparagraph 4.B. of the Trust; it simply was not funded, and its assets could not be distributed, until after Tadami's death.[2] Subparagraph 4.B. addresses situations both in which Hisako survives Tadami and in which she does not.[3] Yet the language of

---

[2] See Restatement (Third) of Trusts §§ 10, 40 cmt. b (2003) (a trust may be created by an owner's inter vivos transfer of property to another person as trustee for one or more persons; any property, including contingent future interests, may be trust property).

[3] Indeed, Subparagraph 4.B. expressly contemplates a situation in which Hisako dies before Tadami, in which event, all of the Trust property becomes the "Family Share" and funds Trust B when Tadami dies.

Subparagraph 4.B. does not state that Hisako must exercise the power of appointment contained in Subparagraph 4.B.(5) in a will made after Tadami's death. This is in contrast to subparagraph 4.A.(2), which expressly states that if Hisako survives Tadami, upon Hisako's death, the trustees are to transfer, free of trust, the remaining principal of Trust A to persons or Hisako's estate, as she appoints "by a [w]ill <u>made after [Tadami's] death</u>[.]" (Emphasis added.) In short, the language of the Trust, read as a whole, does not reflect an intent to limit the means by which Hisako could exercise Subparagraph 4.B.(5)'s power of appointment to a will made after Tadami's death and the funding of Trust B. <u>See also</u> Restatement (Third) of Property (Wills & Don. Trans.) § 19.11 cmt. c (2011) ("A power of appointment created in the donor's inter vivos trust is created when the trust is established, even if the trust is a revocable trust . . . If the donee survives the establishment of the trust, the power is created, and can be exercised by a document executed before or after the establishment of the trust.").[4]

There is no dispute that Hisako exercised this power of appointment in her Will. Accordingly, the Circuit Court did not err in determining that the power of appointment that was granted to Hisako in Subparagraph 4.B.(5) of the Trust was validly exercised in Hisako's Will.

Ted next contends that even if the Trust allowed Hisako to exercise Subparagraph 4.B.(5)'s power of appointment before Tadami's death, the Circuit Court erred in determining that power was broad enough to allow Hisako to alter "the substantive distribution" of Trust Properties. Ted argues that at most, Hisako had the power to control the manner in which Trust Property was distributed, but not to change which children received which property.

---

[4] Ted also argues that if Hisako's power of appointment was validly exercised, it would render the Trust irrevocable. Comment c to Section 19.11 refutes this argument, as follows: "If the inter vivos trust is revocable, an exercise by the donee after the trust is established that does not remove the appointed property from the trust remains subject to the donor's power to revoke or amend the trust, which includes the authority to revoke or amend the power created in the trust."

The language of Subparagraph 4.B.(5) does not make this distinction or create this limitation.  Tadami gave Hisako a testamentary power as to the distribution of "such portions of the principal and unpaid income of [Trust B] . . . to and among [Tadami]'s issue upon such conditions and estates, <u>and</u> in such a manner as [Hisako] may appoint . . . ."  (Emphasis added.)  In the event that power was not exercised, Subparagraph 4.B.(7) provided that the properties in Trust B would be distributed per the terms of the Trust after Tadami and Hisako died.  Ted's argument is without merit.

## III.  Conclusion

For the reasons discussed above, we affirm the "Judgment on Order Granting in Part and Continuing in Part the Petition to Compel Trustee to (1) Distribute Trust Assets, and (2) Provide an Inventory and Accounting of the Trust, and (3) Pay From His Share or as a Surcharge Trust Income Taxes, Penalties and Interest Due and Owing, Filed August 31, 2018," and the "Judgment on Order Regarding Further Hearing on the Petition to Compel Trustee to (1) Distribute Trust Assets, and (2) Provide an Inventory and Accounting of the Trust, and (3) Pay From His Share or as a Surcharge Trust Income Taxes, Penalties and Interest Due and Owing, Filed November 29, 2018," both entered on May 8, 2020, in the Circuit Court of the First Circuit.

DATED:  Honolulu, Hawaiʻi, July 30, 2024.


On the briefs:

Andrew J. Lautenbach and
Kukui Claydon
(Starn O'Toole Marcus & Fisher)
for Respondent-Appellant.

Thomas E. Bush
(Thomas Bush Law Office, LLLC)
for Petitioner-Appellee.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Karen T. Nakasone
Associate Judge